Ray MARSHALL, Secty. of Labor, U.
S. Dept. of Labor

v.

Frank J. BOSACK, Jr., et al.

Civ. A. No. 77–3223.

United States District Court,
E. D. Pennsylvania.

Aug. 22, 1978.

Alan Yamamoto, Arlington, Va., for plaintiff.

Charles A. Bressi, Jr., Pottsville, Pa., for defendants.

## MEMORANDUM TO SUPPLEMENT BENCH OPINION

HUYETT, District Judge.

On April 21, 1978, I held oral argument on the parties' motions for summary judgment. After argument, I orally rendered an opinion from the bench, granting summary judgment in favor of plaintiff Secretary of Labor and stating the reasons for my conclusions. The purpose of this memorandum is to clarify and amplify those reasons stated in open court.

The facts are not in dispute. Defendants Frank Bosack and Edward Hoke own and operate as a partnership a coal preparation plant, the Glen Worth Coal Company (Glen Worth), located near Pottsville, Pennsylvania. They have no other employees. On June 27, 1977, one Michael Sheib, an authorized representative of the Secretary of Interior employed by the Mining Enforcement and Safety Administration, was refused entrance to Glen Worth's premises to conduct an inspection pursuant to the Federal Coal Mine Health and Safety Act of 1969 (Act), 30 U.S.C. §§ 801–878. On subsequent occasions, defendants continued to refuse authorized representatives entrance to inspect Glen Worth.

Defendants claim that they are not subject to the provisions of the Act because their products do not enter commerce, nor do their operations or products affect commerce. 30 U.S.C. § 803. The parties have stipulated to the following facts relative to the question of whether defendants are covered by the Act. Glen Worth sold approximately 4,241 tons of coal from January through October of 1977. All of this coal was processed and sold within the state of Pennsylvania; all but 300 tons was consumed within Pennsylvania. Further, Glen Worth stopped selling coal to their only

out-of-state buyer in May, 1977. The sole question before the court was whether, under the facts stated above, the defendants were subject to the terms of the Act. I determined that they were.

First of all, the defendants admitted that Glen Worth, though a coal processing plant, falls within the definition of "coal mine" set forth in the Act. 30 U.S.C. § 802(h). That subsection specifically enumerates "coal preparation facilities" as one of the types of enterprises covered by the terms of the Act.

Defendant argued strenuously that Glen Worth's operations do not affect commerce and, therefore, Glen Worth cannot be subject to the provisions of the Act. The Act states, "Each coal mine, the products of which enter commerce, or the operations or products of which affect commerce, . . . shall be subject to the provisions of this chapter." 30 U.S.C. § 803. The language of the statute and the legislative history make it clear that Congress intended the reach of the Act to be concurrent with the scope of the Commerce Clause. *See* S.Rep. No.1055, 89th Cong., 2d Sess. 1 (1966) *reprinted at* 1966 U.S.Code Cong. & Admin. News, p. 2072. Thus, in deciding whether the operations of Glen Worth "affect commerce," I was in reality deciding whether the Commerce Clause is broad enough to cover activities such as the operations of Glen Worth.

I concluded that the activities of the defendants do "affect commerce." The Act does not require that the effect on interstate commerce be substantial; any effect at all will subject Glen Worth to the Act's coverage. Even though coal processed at Glen Worth is sold intrastate only, its products compete with those of out-of-state producers. Therefore, local users might be forced to purchase interstate if Glen Worth did not produce coal. *Secretary of Interior v. Shingara,* 418 F.Supp. 693 (M.D.Pa.1976). Because of this "ripple effect", defendants' operations do affect commerce. I might add parenthetically that the cumulative impact of all intrastate sales of coal certainly has a substantial impact upon interstate commerce. *See Wickard v. Filburn,* 317

U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). For these reasons, I concluded that Glen Worth's sale of coal intrastate does "affect commerce."

Another approach which may be used to analyze whether Glen Worth's operations "affect commerce" is based upon a specific Congressional finding that "the disruption of production and the loss of income to operators and miners as a result of coal mine accidents or occupationally caused diseases unduly impedes and burdens commerce." 30 U.S.C. § 801. Here, Congress found that a class of activities, unsafe mine operations, affected commerce. For purposes of this finding it makes no difference whether a mine sells all of its coal intrastate, since the disruption of coal mine activities in itself is what impedes and burdens commerce. In the case of a mine that sells intrastate only, the disruption of production would force buyers to look elsewhere to purchase coal. Where Congress has made a specific finding that a certain class of activities burdens interstate commerce, and that Congressional determination is a reasonable one, I am unwilling to reach a contrary conclusion. *See Katzenbach v. McClung,* 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964).

It is clear to me that defendants' real contention is that the Act simply does not apply to an operation which is owned and operated by the same two persons, without the help of other employees. Defendants' argue that if the purpose of the Act is to protect coal miners, it is pointless to regulate an operation which has no employees. However, Congress plainly did not exempt owner-operated mines from the coverage of the Act. *Secretary of the Interior v. Shingara, supra,* at 695. *But see Morton v. Bloom,* 373 F.Supp. 797 (W.D.Pa.1973).

Finally, the Government suggested during oral argument that even an owner-operated coal mine where the coal produced was used solely for the consumption of the owner would, nevertheless, be subject to the Act. I have serious doubts whether such an operation could be held to "affect commerce," but I emphasize that was not the

issue or the facts before me. Defendants sell a substantial amount of coal intrastate, and in the past have sold coal which has been used interstate. Under the circumstances, and for the reasons stated in detail above, I reaffirm my conclusion that defendants' operation is subject to the Act.