Ray MARSHALL, Secretary of Labor, U. S. Department of Labor

v.

Wade KILGORE, t/d/b/a Wade Kilgore Coal Company, No. 4 Mine.

No. CIV-1-78-160.

United States District Court, E. D. Tennessee, S. D.

July 16, 1979.

John C. Cook, Asst. U. S. Atty., Chatta-nooga, Tenn., Fred W. Moncrief, Trial Atty., Dept. of Labor, Washington, D. C., for plaintiff.

Ray H. Moseley, Humphreys, Hutcheson & Moseley, Chattanooga, Tenn., for defend-ant.

## MEMORANDUM

FRANK W. WILSON, Chief Judge.

This is an action brought by the Secre-tary of Labor pursuant to the Federal Mine Safety and Health Act of 1977, ("Act") 30 U.S.C. 801, et seq. seeking injunctive relief as a result of the defendant's denial of entry and refusal to permit an inspection of the defendant's coal mine by the Secretary. This matter is presently before the Court on the plaintiff's motion for summary judg-ment. By order entered April 2, 1979, the parties agreed that no issues of fact remain in this case and that the legal issues should be presented to the Court on a motion for summary judgment. (Court File No. 12). It appearing to the Court that there are no genuine issues as to any material facts in dispute, this is a proper case for disposition by motion for summary judgment. Rule 56, Federal Rules of Civil Procedure.

The undisputed facts in this case showed that the defendant operates a coal mine in Marion County, Tennessee, having leased the mining rights from Mr. A. C. Wells. The defendant mines the coal and Mr. Wells takes possession of the coal and sells the coal to Mr. Billy Moon. Pursuant to an agreement between Mr. Wells and Mr. Moon, the coal mined by the defendant is sold and consumed for domestic purposes only, and is not placed in interstate com-merce.

Mr. Moon purchases coal from other sources and sells coal to many companies, including some of which are outside the State of Tennessee, but the coal purchased from the defendant's mine is kept in a separate stockpile and is sold only to local customers for domestic consumption. Mr. Moon stated that he would sell coal from his other sources to domestic consumers if he ran out of coal from the Kilgore mine, however, he would not sell coal from the Kilgore mine to anyone other than local consumers. The coal mined at the Kilgore mine is in the Sewanee seam which is coal of metallurgical quality and is in limited supply.

On April 19, 1978, representatives of the Secretary went to the defendant's mine to conduct a health and safety inspection of that mine pursuant to the Act. The de-fendant denied entry to the Secretary's rep-resentatives and refused to permit them to conduct an inspection. Subsequently, the plaintiff brought this action and asked for an injunction enjoining the defendant from refusing to admit the Secretary's represent-atives to inspect the defendant's coal mine.

The defendant has taken the position that since his coal is sold completely intrastate it is not subject to the Act, and therefore the Court lacks jurisdiction of this matter. In his brief in response to the plaintiff's mo-

**6**

tion for summary judgment, defendant also appears to take the position that enforcement of the Act would deny him of a constitutionally reserved right of intrastate activity.

The plaintiff makes two basic legal arguments in support of his position. The plaintiff initially argues that the defendant's assertion of the lack of jurisdiction of the defendant's mine is premature and secondly that the Court in fact has jurisdiction over the defendant mine.

The second assertion by the plaintiff will be dealt with initially by the Court. The plaintiff asserts three reasons that the Court has jurisdiction over the defendant mine: (1) Congress undertook, in enacting the Act to regulate a class of activity, i. e., mining, and any mining activity is therefore encompassed by the Act; (2) products of the defendant mine affect commerce as a matter of law; (3) the facts of the case show that the operation of the defendant mine affects commerce. The contentions concerning the affect of the products of the Kilgore mine and the operation of the Kilgore mine on commerce will be dealt with jointly by the Court.

The Act's stated purpose is as follows: It is the purpose of this chapter (1) to establish interim mandatory health and safety standards and to direct the Secretary of Health, Education and Welfare and the Secretary of Labor to develop and promulgate improved mandatory health or safety standards to protect the health and safety of the Nation's coal and other miners; (2) to require that each operator of a coal or other mine and every miner in such mine comply with such standards; (3) to cooperate with, and provide assistance to, the States in the development and enforcement of effective State coal or other mine health and safety programs; and (4) to improve and expand, in cooperation with the States and the coal or other mining industry, research and development and training programs aimed at preventing coal or other mine accidents and occupationally caused diseases in the industry. 30 U.S.C. § 801(g).

The Act includes within its coverage "Each coal or other mine, the products of which enter commerce, or the operations or products of which affect commerce, and each operator of such mine, and every miner in such mine shall be subject to the provisions of this chapter." 30 U.S.C. § 803.

Commerce is defined at 30 U.S.C. § 802(b) as follows:

"Commerce" means trade, traffic, commerce, transportation, or communication among the several States, or between a place in a State and any place outside thereof, or within the District of Columbia or a possession of the United States, or between points in the same State but through a point outside thereof.

In determining whether or not the Court has jurisdiction over the defendant mine, it must first be determined if there is, as contended by the defendant, a constitutionally protected right of intrastate activity. Congress' authority for legislation such as the Federal Mine Safety & Health Act is derived from the commerce clause which grants Congress the power to "regulate Commerce with foreign Nations, and among the several States . . ." U.S. Constitution, Article I, Section 8, Clause 3.

As early as 1914, the United States Supreme Court recognized that Congress had the power to control purely intrastate activities to properly regulate interstate commerce. *Houston & Texas Railroad v. United States*, 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341 (1914). In 1941, the Supreme Court, in dealing with the intrastate sale of milk, held as follows:

It follows that no form of state activity can constitutionally thwart the regulatory power granted by the commerce clause to Congress. Hence the reach of that power extends to those intrastate activities which in a substantial way interfere with or obstruct the exercise of the granted power. *United States v. Wrightwood Dairy Co.*, 315 U.S. 110, 62 S.Ct. 523, 526, 86 L.Ed. 726 (1941).

In 1975, the Supreme Court held:

. . . Congress' power under the Commerce Clause is very broad. Even

activity that is purely intrastate in character may be regulated by Congress, where the activity, combined with like conduct by others similarly situated, affects commerce among the States or with foreign nations. *Fry v. United States*, 421 U.S. 542, 547, 95 S.Ct. 1792, 1795, 44 L.Ed.2d 363, 369 (1975).

Therefore, with respect to activities which may have an affect on interstate commerce, there is no constitutionally protected right to engage in unregulated intrastate activities.

 This brings the court to the question of whether or not the defendant's mine is subject to the provisions of the Act. It has been held that the Act must be interpreted liberally in light of its primary purpose of preserving human life. *Freeman Coal Mining Co. v. Interior Bd. of Mine Operations Appeals*, 504 F.2d 741 (7th Cir. 1974).

The Act provides that a mine is subject to the Act if (1) its products enter commerce, or (2) its operations or products affect commerce. As set out in the undisputed facts, the products from the defendant mine do not enter commerce and therefore the only way in which they could be subject to the Act would be if the operations or products from the defendant's mine affect commerce.

 The undisputed facts in this case show that the coal from the defendant's mine is sold only intrastate. The coal is sold to Mr. Moon who sells both the Kilgore coal intrastate and other coal interstate. It is further undisputed that the type of coal mined at the Kilgore mine is in limited supply.

In *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942), the Supreme Court discussed a similar situation involving the growing of wheat by an individual for his own use and whether or not that wheat would be subject to federal regulation. The Supreme Court held as follows:

It can hardly be denied that a factor of such volume and variability as home-consumed wheat would have a substantial influence on price and market conditions.

This may arise because being in marketable condition such wheat overhangs the market and if induced by rising prices tends to flow into the market and check price increases. But if we assume that it is never marketed, it supplies a need of the man who grew it which would otherwise be reflected by purchases in the open market. Home-grown wheat in this sense competes with wheat in commerce. 317 U.S. at 128, 63 S.Ct. at 91.

Using the rationale of the *Wickard* decision, the Court finds that it is inescapable that the product of the defendant's mine would have an affect on commerce. The fact that the defendant's coal is sold only intrastate does not insulate it from affecting commerce, since its mere presence in the intrastate market would effect the supply and price of coal in the interstate market. *Marshall v. Bosack*, 463 F.Supp. 800 (E.D.Pa. 1978).

 Some Courts have indicated that Congress' purpose in enacting the regulation should be considered in determining if an intrastate activity is regulated. Given the stated purpose of the Federal Mine Safety and Health Act of promoting health and safety standards in the coal mining industry the mining operations of the defendant are clearly activities which Congress intended to regulate to insure that mining is done in a safe manner.

Therefore, the Court is of the opinion that the plaintiff's motion for summary judgment should be granted and the defendant should be enjoined from refusing to admit authorized representatives of the plaintiff to inspect the defendant's coal mine and from interfering with or hindering such representatives in carrying out the provisions of the Act.

Having determined that the defendant is subject to the jurisdiction of the Act since its products affect commerce, it is unnecessary for the Court to consider the plaintiff's contentions with respect to the premature challenge of the defendant to the Court's jurisdiction and that all mining activities of any nature are covered by the Act.