Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

KNISELEY COAL COMPANY, a corporation, Defendant.

Civ. A. No. 80–139.

United States District Court, W. D. Pennsylvania.

March 14, 1980.

James Swain, U. S. Dept. of Labor, Philadelphia, Pa., for plaintiff.

Robert M. Hanak, Reynoldsville, Pa., for defendant.

OPINION

SNYDER, District Judge.

The Secretary of Labor brings injunctive action under the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 801 *et seq.* to require access to the Kniseley Coal Company Mine. The Motion for Injunction will be granted.

Action was brought against three brothers, Joseph Caltagrone, Francis Caltagrone, and Louis Caltagrone, trading and doing business as Kniseley Coal Company. In reality, Kniseley Coal Company is a Pennsylvania corporation owned and operated by these three brothers and other brothers. At the hearing, the pleadings were amended to show that the Defendant is Kniseley Coal Company, a corporation. All employees at the mine are family members and owners. Kniseley's coal is sold within the Commonwealth of Pennsylvania to Pennsylvania Power and Light Company's Sunbury Power Plant. Sales in 1977 were 12,264.66 tons; in 1978, 6,314.44 tons; and in 1979, 3,150.22 tons. The coal is burned to produce electricity to meet Pennsylvania Power's demands in Pennsylvania. Unused electricity from the Sunbury Plant and Pennsylvania Power's other four plants is sold to the "Northeastern Grid", a grouping of electric utility companies in Pennsylvania, New Jersey and Maryland, without an accounting on a state basis. Member utilities draw from the Grid when, for any reason, they are short of electricity.

On July 26, 1978, July 27, 1978, and December 4, 1979, an authorized representative of the Secretary of Labor went to the Defendant's No. 10 Mine in Jefferson County, Pennsylvania, to conduct an inspection of the mine pursuant to Section 103 of the Act, 30 U.S.C. § 813, and was refused entry.

### Discussion

"To support a preliminary injunction, the moving party must demonstrate that irreparable injury will occur if relief is not granted . . . until a final adjudication on the merits can be made and that there is a reasonable probability of eventual success on the merits. In addition, the court must weigh the possibility of harm to the nonmoving party as well as to any other interested persons and, when relevant, harm to the public."

*The Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351 (3rd Cir. 1980) (footnotes omitted). Under the Federal Mine Safety and Health Act, the Secretary of Labor is required to inspect coal mines to determine whether mandatory health and safety standards are complied with and whether an imminent danger exists. 30 U.S.C. § 813. Interference with enforcement of federal safety standards undoubtedly will result in irreparable harm, and at 30 U.S.C. § 818(b), Congress expressly empowered the court to enjoin defendants from refusing to permit federal inspection. *See Marshall v. Gilliam*, 462 F.Supp. 133 (E.D.Mo.1978). The only problem here is whether the Kniseley Company coal mine comes within the provisions of the Act.

■ The Defendants contended that the mine is family-owned and family-operated and hence not within the Act. Any argument that an owner-operated mine is outside the provisions of the Act is foreclosed in the Third Circuit under the recent decision, *Marshall v. Kraynak*, 604 F.2d 231 (3rd Cir. 1979), *cert. denied* —— U.S. ——, 100 S.Ct. 664, 62 L.Ed.2d 643 (1980). Defendant apparently concedes as much since the argument was not pressed in its brief.

■ Without addressing the validity of Defendant's argument as to "engaging in commerce", the argument falls short as to "affecting commerce." The Act limits coverage to "[e]ach coal mine . . . , the products of which enter commerce, or the operations or products of which *affect commerce*." 30 U.S.C. § 803 (emphasis added). In *Marshall v. Kraynak, supra*, the Court of Appeals for the Third Circuit noted that in enacting the Coal Mine Health and Safety Act, "Congress intended to exercise its authority to regulate interstate commerce to 'the maximum extent feasible through legislation.'" 604 F.2d at 232.

Under facts similar to those here, this Court held that coal, sold to an electric utility which burned the coal to produce electricity sold in two states, affected interstate commerce. *Andrus v. Kaskan*, C.A. 77–259 (W.D.Pa., October 20, 1977). Even coal sold wholly intrastate for domestic consumption and not used in the production of goods later sold in interstate commerce, was held to affect interstate commerce because its mere presence in the intrastate market would affect the supply and price of coal in the interstate market. *Marshall v. Kilgore*, 478 F.Supp. 4 (E.D.Tenn.1979). *Marshall v. Kilgore, supra*, relied in part on the seminal decision on the extent of the Congress' commerce power in *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942), wherein the Supreme Court held the growing of wheat by an individual even for his own use would be subject to federal regulation because home consumed wheat would have a substantial influence on price and market conditions. *See also Marshall v. Bosack*, 463 F.Supp. 800 (E.D.Pa.1978); *Marshall v. Kraynak*, 457 F.Supp. 907 (W.D.Pa.1978), *aff'd* 604 F.2d 231 (3rd Cir. 1979), *cert. den.* —— U.S. ——, 100 S.Ct. 664, 62 L.Ed.2d 643 (1980); *Secretary of the Interior v. Shingara*, 418 F.Supp. 693 (M.D.Pa. 1976).

We conclude that the Defendant's sale of coal to a power generating plant which sells some of its electricity across state lines affects interstate commerce.

An appropriate Order granting an injunction will be entered.