**KODAK MINING COMPANY, Movant,**

v.

**CARRS FORK CORPORATION,
Respondent.**

Supreme Court of Kentucky.

May 10, 1984.

As Modified May 17, 1984.

Henry D. Stratton, Stratton, May & Hays, PSC, Pikeville, Armistead W. Gilliam, Jr., Smith & Schnacke, Dayton, Ohio, for movant.

A.P. Gullett, III, Cooper, Gullett, Combs, Holliday & James, Hazard, for respondent.

## OPINION AND ORDER OF
## THE COURT

The issue presented by this motion for interlocutory relief pursuant to CR 65.09 is whether the trial court was correct in refusing to stay its proceedings pending arbitration between the parties pursuant to clauses in the controlling contracts, two coal mining leases, which required arbitration of disputes.

In 1956 Kodak Mining Company, the lessee, and Carrs Fork Corporation, the lessor, entered into two coal mining leases. Both of the leases contained a broad arbitration clause. The clause in the March 31, 1956 lease states:

> If at any time, at termination of this lease or otherwise, there shall be a controversy concerning any item or term of this lease, the said Lessee and Lessor agree to arbitrate as follows....

The clause in the April 1, 1956 lease states:

> In the event of any difference or dispute arising between the parties hereto, growing out of the terms of this lease, or the construction thereof, or the operations of the lessee or rights or obligations of the lessor or lessee hereunder, such questions shall be determined by arbitration in the manner provided for in this article and the fact that arbitration is especially provided for under certain clauses hereof shall not be deemed to exclude arbitration under other clauses where not so specifically provided.

On March 3, 1982 Carrs Fork commenced an action against Kodak in the Knott Circuit Court claiming a right to relief based upon alleged actions or inaction by Kodak in violation of its obligations under the leases. Kodak raised Carrs Fork's failure to submit the dispute to arbitration as a defense in the circuit court proceeding and on June 28, 1982 Kodak requested a hearing on its special defense of arbitration.

However, on May 4, 1983 the trial judge overruled Kodak's arbitration defense and set the matter for further proceeding.

On May 24, 1983 Kodak moved for CR 65.07 interlocutory relief from the Court of Appeals which was denied by that court on July 13, 1983. On July 19, 1983 Kodak filed this motion for interlocutory relief pursuant to CR 65.09 requesting this Court to vacate the Court of Appeals' Order and to direct the Knott Circuit Court to stay its proceedings pending arbitration between the parties pursuant to the terms of the mining leases.

Under the facts of this case we must grant Kodak Mining Company's motion for interlocutory relief from the Court of Appeals' Order entered July 13, 1983.

■ The first point to be discussed is whether this action is a dispute under the contracts in question and is therefore subject to arbitration under the terms of those contracts. Kodak claims that Carrs Fork's action was based upon alleged actions or inactions by Kodak which were violative of its contractual obligations. On the other hand, Carrs Fork claims the action was brought to have the leases cancelled, revoked and forfeited for Kodak's failure to develop the property and for Kodak's failure to mine in conformity with the applicable laws of the Commonwealth of Kentucky. Carrs Fork contends that an action to cancel the entire contract is an issue for the court and not a subject fit for arbitration because arbitration cannot provide the relief sought, which is the cancellation or revocation of the contract. *R.B.F. Management Co. v. Sunshine Towers Apartment Residences Association,* (1977, Fla. App. D2), 352 So.2d 561. In *R.B.F. Management Co.* the Florida court held that where the issue is the validity of the entire contract, an arbitration clause is not applicable. We are not inclined to follow the ruling of the Florida Court primarily because the issue in question here does not involve the validity of the entire contract.

The issues herein involve the performance or the non-performance of terms of the contracts, specifically the alleged nondevelopment of the property and the alleged failure to mine in conformity with the laws of the Commonwealth of Kentucky, therefore, the arbitration clause is applicable.

■ Next, we must determine whether an agreement to arbitrate disputes arising under a contract evidencing a transaction in interstate commerce is valid and specifically enforceable by stay of a judicial proceeding brought in Kentucky where the proceeding involves issues referable to arbitration. The short answer is: yes, it is. An agreement to arbitrate disputes arising under a contract evidencing a transaction in interstate commerce is valid and is specifically enforceable by stay of a judicial proceeding brought in Kentucky where the proceeding involves issues referable to arbitration. This was our holding in *Fite & Warmath Construction Co. v. MYS Corp.*, Ky., 559 S.W.2d 729 (1977), we said:

> We, therefore, hold that the provisions of the U.S. Arbitration Act of 1925 apply to actions brought in the courts of this state where the purpose of the action is to enforce voluntary arbitration agreements in contracts evidencing transactions in interstate commerce. Id. at 734.

Our next consideration must center upon whether the action in the case at bar falls under the provisions of the Federal Arbitration Act. Section 2 of the Federal Arbitration Act, 9 U.S.C. Section 2, provides in pertinent part that:

> A written provision in any ... contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The last clause in Section 2 refers only to revocation based upon fraud, mistake or other defect in the making of the agreement, therefore, arbitration may be had as to all issues arising subsequent to the making of the contract. Carrs Forks' claims here are not related to the making of the contract. Instead, they are related only to alleged actions or inactions by Kodak after the leases were executed. As a result, Carrs Fork cannot rely upon the "... save upon such grounds as exist at law or in equity for the revocation of any contract ..." clause of 9 U.S.C. Section 2 in this particular case.

We have already said that there was a written provision within the leasing contracts here to settle by arbitration a controversy thereafter arising out of such contracts or transactions.

We must now consider whether these were contracts "... evidencing a transaction involving interstate commerce."

First of the factors to be considered in making the "interstate commerce" determination is the fact that the parties were incorporated in different states. Carrs Fork is a Virginia corporation and Kodak is incorporated in Kentucky. In *Fite & Warmath, supra*, the Court specifically noted, in concluding that the transaction there involved was one in interstate commerce, that the parties were incorporated in different states. Id. at 732 and 734.

A second point which indicates "interstate commerce" is that both arbitration clauses specify that selection of the board of arbitrators should be done by federal judges from different states; one selecting judge from the Western District of Kentucky and one from the Western District of Virginia. This fact adds to the evidence that this is a transaction in interstate commerce.

A third consideration is whether the leases in question involve interstate commerce. Carrs Fork contends, expectedly, that they do not. Carrs Fork suggests that these coal leases amount to a sale of real estate. Respondents cite *Mills v. Mills*, 275 Ky. 431, 121 S.W.2d 962 (1938) for the proposi-

tion that a lease of minerals under the surface was a sale of a portion of the real estate. Therefore, respondent contends that the questioned transactions were entirely local and involved only property located in Knott County, Kentucky until such time as the coal is severed by mining. They argue that we should not be concerned with the sale or shipment of coal interstate or intrastate in this case. Carrs Fork contends that the primary purpose of the leases is the development or mining of coal on the property and that the action is to cancel, revoke or forfeit the leases, therefore, this is not an interstate commerce issue.

■ With regard to this third consideration, movants, Kodak Mining, suggest that the leases do involve interstate commerce for the following reasons: (1) Kodak characterizes the prime purpose of the leases as being "... mining activity...." (2) All mining activity, whether done before or after the coal is transported across state line, is in interstate commerce. *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940). (3) The Coal mining industry as a whole is extensively regulated by the federal government in the exercise of its power over interstate commerce. The broad and all inclusive nature of the Federal Coal Mine Health & Safety Act of 1969 evidences this point (Title 30 of the United States Code, 801 et seq.). (4) Even coal mined and sold entirely intrastate is still considered to be in interstate commerce because the production and sale of coal on a local basis affects the supply and price of coal in the interstate market. *Marshall v. Kilgore*, 478 F.Supp. 4 (D.Tenn.1979). (5) The fact that these are leases of real property is irrelevant. Arbitration provisions in leases of real property are enforceable under the Federal Arbitration Act if the leases' purpose is to either generate or affect activity in interstate commerce. *Fairchild & Co. v. Richmond, Fredericksburg & Potomac R. Co.*, 516 F.Supp. 1305 (D.D.C.

1981). Here the purpose of the leases is both to generate and affect activity in interstate commerce because the purpose is coal mining.

■ We agree with the respondent's argument on this third matter for consideration. The question which underlies this action is whether such mining activity was or was not done in compliance with the expectations of the parties. Under *Sunshine, supra*, mining activity amounts to transactions in interstate commerce. In addition, we take judicial note of the fact that the coal mining industry as a whole is extensively regulated by the federal government. *Marshall v. Kilgore, supra*, stands for the proposition that even coal mined and sold entirely intrastate is still considered to be in interstate commerce because the production and sale of coal on a local basis affects the supply and price of coal in the interstate market. Furthermore, *Fairchild, supra*, says that a lease whose purpose is to either generate or affect activity in interstate commerce and which contains an arbitration provision is enforceable under the Federal Arbitration Act. As we have said, the purpose of the leases here is coal mining and affects activity in interstate commerce. We conclude that the coal leases in this case are contracts evidencing a transaction involving interstate commerce.

To summarize what we have said to this point: (1) The issue in this case deals with a performance issue under the contracts; (2) The actions in the case at bar fall under the provisions of the Federal Arbitration Act; (3) The coal leases involved in this particular case are contracts evidencing a transaction involving interstate commerce; and (4) An agreement to arbitrate disputes arising under a contract evidencing a transaction in interstate commerce is valid and is specifically enforceable by stay of a judicial proceeding brought in Kentucky where the proceeding involves issues referable to arbitration.

■ One further issue needs to be discussed. The question has arisen as to

whether Kentucky public policy would prevent enforcement of a private arbitration agreement that did not fall under the provisions of the Federal Arbitration Act. Since we have specifically held that the actions in the case at bar do fall under the Federal Arbitration Act it is not necessary for this court to address this question. However, in the interest of clarifying our holding in *Fite & Warmath, supra,* we will take this opportunity to once again say that Kentucky has no public policy that would prevent the enforcement of a private arbitration agreement in contract cases where the Federal Arbitration Act or comparable legislation might apply. Assuming, *arguendo,* that the Federal Act did not apply, we reassert that the common law rule against arbitration is no longer viable and what is commonly referred to as Kentucky's "ouster of jurisdiction" doctrine is no longer applicable in future contract dispute situations like that in the case at bar.

In *Fite & Warmath, supra,* we said: The device of arbitration has been specifically approved by our State Constitution since 1799. Our case law has stated that it is the policy to favor the settlement of disputes by means of arbitration. The legislature has adopted an arbitration statute, Chapter 417 of the Kentucky Revised Statutes. This Act empowers the parties to voluntarily submit an existing dispute to the process of arbitration. Id. at 734.

We also stated that: ... judge-made law prohibits the enforceability of agreements to arbitrate future disputes based on the questionable justification that such agreements 'oust the courts of jurisdiction.' *Id.* at 735.

At that time and at that point we noted that, "This rationale has not escaped without serious criticism." *Id.* at 735. We then went on to say that in non-adhesion contracts or in contracts where the bargaining power of the parties is nondisparate then in an:

... agreement voluntarily entered into by sophisticated and knowledgeable businessmen concerning a financial transaction of considerable magnitude ... we find no real support for the proposition that one of the parties is free to repudiate his promise. *Id.* at 735.

We concluded that, "We are convinced that the application of federal law in this instance does not displace a fundamental public policy of this state." By that we meant that the oft criticized, non-constitutionally mandated, judge-made "ouster of jurisdiction" doctrine which has heretofore prevented the private arbitration of future contract disputes is not part of the fundamental public policy of this state.

■ The final issue that we will address is the question of waiver. Respondent contends that under several federal cases the Movants have waived their right to rely upon this arbitration clause as a defense. It is contended that the gist of the arbitration rule is that active participation in a lawsuit or other action inconsistent with the right to arbitration amounts to a waiver of the right to arbitrate. Movant admits in their brief that, "there is no case there squarely on all fours with our case...." We are not convinced that Kodak under the facts of this case took any steps that were inconsistent with their right to arbitration or which indicated that they waived their right to arbitration.

We vacate the Order of the Kentucky Court of Appeals and we hereby direct the Knott Circuit Court to stay its proceedings on this matter pending arbitration between the parties.

All concur except VANCE, J., who believes we should not reach the merits of this issue because it arose pursuant to a request for interlocutory relief prior to final judgment, and there is no showing that movant does not have an adequate remedy

by appeal from any final judgment that may be entered in this case.

ENTERED May 17th, 1984.

/s/ Robert F. Stephens

Robert F. Stephens
Chief Justice