### CARRS FORK CORPORATION, Appellant,

v.

### KODAK MINING COMPANY, Appellee.

### No. 89–SC–948–DG.

Supreme Court of Kentucky.

April 11, 1991.

Rehearing Denied July 3, 1991.

Asa P. Gullett, III, Gullett, Combs and Branham, Stephen L. Tackett, Tackett and Markelonis, Hazard, for appellant.

John Doug Hays, Pikeville, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals reversing a judgment of the circuit court which adopted an arbitration award of May 13, 1987 which terminated a coal lease known as "Defeated Creek lease."

In 1956, Kodak and Carrs Fork entered into two coal mining leases, both of which contained a typical arbitration clause. In 1982, Carrs Fork sued Kodak claiming a right to relief based on the alleged inaction of Kodak in violation of its obligations under the leases. Kodak demanded that the issue be submitted to arbitration according to the contract. On interlocutory appeal, this Court, in *Kodak Mining Company v. Carrs Fork Corp.*, Ky., 669 S.W.2d 917 (1984), held that the arbitration provisions in the lease were enforceable under the Federal Arbitration Act and ordered the circuit court to stay its proceeding pending arbitration. A majority of the three-member arbitration panel determined that the lease was terminated by Kodak's failure to mine it in a diligent manner from 1977 to 1981. The circuit court adopted the decision of the arbitrators but the Court of Appeals reversed. This appeal followed.

The issue is whether an arbitration award is so grossly inequitable so as to allow the courts to reverse the judgment based on equitable powers.

It is well settled that the general rule is that an arbitration award will not be set aside for any error, either in law or fact. The particular Kentucky rule is found in *Taylor v. Fitz Coal Co.*, Ky., 618 S.W.2d 432 (1981), which determined in pertinent part that an award may be set aside if there has been a gross mistake of law or fact amounting to fraud or undue partiality. K.R.S. 417.018 reflects the uniform law regarding arbitration and it states:

Power of Courts Over Award—No award shall be set aside for want of form. But courts shall have power over awards on equitable principles as heretofore.

The common dictionary definition of "gross" is immediately obvious or glaringly noticeable. The reason this arbitration award must be vacated is that the majority of arbitrators and the circuit court ignored the legal maxim that the law abhors a forfeiture of a coal lease. Carrs Fork was arbitrary in its attempt to cancel the lease.

Civil Rule 61.02 provides that palpable error which affects the substantial rights of a party may be considered by the reviewing court even though insufficiently raised or preserved for review and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error. In applying this rule, the palpable error must result from action taken by the court rather than an act or omission by the attorneys or litigants. Here the error in the arbitrator's failure to recognize and apply the legal maxim that the law abhors forfeiture meets this test. *Cf. Cobb v. Hoskins*, Ky.App., 554 S.W.2d 886 (1977).

The majority of the arbitration panel clearly disregarded the necessary use of the Defeated Creek lease surface by Kodak in the development of other properties in the area. The majority also failed to consider the applicable legal standard where the Defeated Creek lease required the lessee to operate the leased premises with diligence, but did not specifically define what constituted diligence.

■ It was error for the arbitration panel to fail to find that Carrs Fork waived any complaint of the failure to operate the lease with diligence from 1976 through 1981 by the acceptance of royalties under the lease for the years in question.

A lessor cannot forfeit a coal lease unless he first notifies the lessee that he will no longer accept the annual rent and permit the land to remain idle and undeveloped but will require the lessee to execute the contract according to intention of the parties.... *Ohio Valley Oil & Gas Co. v. Irvin Development Co.,* 184 Ky.Reports 517, 212 S.W. 110 (1919).

■ The failure of Carrs Fork to give Kodak notice prior to the filing of the lawsuit that a forfeiture would be demanded unless the terms of the lease regarding development were followed precludes the action for forfeiture. The filing of a lawsuit is not proper notice when a lessor seeks forfeiture on due diligence grounds. *B & B Oil Co. v. Lane,* Ky., 249 S.W.2d 705 (1952). The law does not favor forfeiture and none should be allowed without the one claiming the right first giving notice that a forfeiture will be demanded unless the terms of the lease are followed. *Cameron v. Lebow,* Ky., 338 S.W.2d 399 (1960) (overruled on different grounds).

■ Generally, an arbitration decision will not be held invalid under the common law merely because it was unjust, inadequate, excessive or contrary to law. Nothing in the award relative to the merits of the controversy as submitted even if wrongly decided is grounds for setting aside the award. However, despite the reluctance of the courts to interfere with decisions made by arbitrators chosen by the parties, the courts will act in a proper case. 5 Am.Jur.2d § 167 (1962) Arbitration and Award, "Impeachment and Vacation of Award." In *Second Society of Universalists v. Royal Insurance Co.,* 221 Mass. 518, 109 N.E. 384 (1915), an arbitration case which was reversed because of refusal to hear evidence of loss, the reviewing court observed that "an award might be so grossly and palpably below the actual loss as to afford intrinsic evidence of fraud, bias or prejudice."

In support of their inadequacy theory the court quoted Lord Thurlow that the inadequacy must be "so strong, gross and manifest that it must be impossible to state it to a man of common sense without producing an exclamation at the inequality of it." *Royal Insurance, supra* 109 N.E. at p. 387.

■ Under the Uniform Arbitration Act, the grounds for vacation of an award are generally fraud, corruption, undue partiality, misconduct, exceeding the powers of the arbitrator, refusal to hear material evidence, prejudicial misconduct at the hearing, lack of a valid arbitration agreement, the issue not having been determined adversely in court. A general exception is that the award may always be impeached for a mistake clearly appearing on its face. An award may be so grossly inadequate or excessive as to be in effect a fraud and subject to vacation by a court although no actual fraud is claimed. An award will be set aside on this ground only in a very clear case. 5 Am.Jur.2d § 173. *Cf. Royal Insurance.*

*Taylor, supra,* recites a number of sound legal principles in regard to the role of the courts in the arbitration process. It is not our purpose to dispute the learned opinion of *Taylor,* but only to broaden the harsh standard of review enunciated therein. There are some situations which do require equitable treatment, and we believe this is such a case. Therefore, pursuant to K.R.S. 417.018 and CR 61.02, this Court must vacate the arbitration award and extend the basis for reviewing such awards accordingly.

The maxim that one who seeks equity must do equity applies to these proceedings. Kodak made a good faith effort to prepay royalties to Carrs Fork on all of the estimated reserves of 960,000 tons remaining in the disputed area.

■ We agree with the majority of the Court of Appeals which stated that the requirement of the law is for courts to consider an arbitration award as the end

and not the commencement of litigation. However, the facts of this case present that rare occasion where it is appropriate for the judiciary not only to review the award but to set it aside.

▬ This decision should not be taken as a signal that arbitration awards will be casually overturned. We reverse this case only because of the failure of the award to provide equity so as to produce palpable error. All forms of alternative dispute options, including arbitration, are favored. However, they are all subject to review by the traditional legal process.

The decision of the Court of Appeals is affirmed and the judgment of the circuit court is reversed with directions to set aside that portion of the arbitration award which cancelled the Defeated Creek lease.

STEPHENS, C.J., and REYNOLDS and SPAIN, JJ., concur.

COMBS, J., concurs by separate opinion.

LEIBSON, J., dissents by separate opinion, in which LAMBERT, J., joins.

COMBS, Justice, concurring.

I concur in the result of the majority opinion, but on entirely different grounds.

Being mindful of the despotic and arbitrary powers of the executive (the crown), the legislature (parliament), and the judiciary, our founding fathers sought to create a government of laws and not of men, where the just powers of the government are derived from the consent of the governed. All of these principles are succinctly stated in our Declaration of Independence.

In order to prevent a re-growth of such arbitrary powers, the framers of our constitution divided our government into three branches. Article 1, § 1 gives all legislative power to the Congress. Section 8 of Article 1 defines the powers of Congress. Section 2 sets forth the powers of the executive branch. Article 3 sets forth the judicial powers. Article 6, cl. 2 provides that the constitution, acts of Congress enacted pursuant thereto, and treaties shall be the supreme law of the land. It does not include judicial opinions.

This omission is significant. Thirty-four of the fifty-five contributors to the constitution were among the most outstanding lawyers in the colonies. They knew what they had been up against and they didn't want it to recur.

Kentucky's constitution is basically the same. Section 4 of our constitution reminds us that the people have all the power and that we in government have only those powers that were delegated to us. Section 14 demands that the courts be open for all persons (including corporations) suffering injury to their property, for remedy by due course of law. Section 27 divides our government into the three branches, and Section 28 prohibits each from exercising any power over the other. Section 29 gives the legislative power to the General Assembly. Sections 109–116 set forth the judicial powers, and do not give the judiciary lawmaking power, only the power to prescribe rules of practice before the Supreme Court and practice and procedure before the Court of Justice.

The powers granted to each of the branches are non-delegable powers.

KRS 417.018 purports to close the courthouse doors as to mistakes of law and fact, to persons who have elected to be bound by arbitration. This statute represents a usurpation of the judicial power by the legislature in that it purports to give finality to the conclusions of law of the arbitrators. Only the people have the power to change the constitution. Section 26 of our constitution provides that all things contrary to the Bill of Rights and this constitution are null and void.

There is a need to expedite the termination of controversies. Arbitration may be one such vehicle. But under our constitution neither the parties nor the arbitrators can tie the hands of the court on questions of law.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The standard for vacating the arbitration award (as both parties agreed) is "gross mistake of law or fact proving undue partiality." At oral argument Kodak Mining conceded there was no single error of law or fact qualifying under this standard and that he was relying instead on the cumulative effect of a number of alleged errors.

In the preliminary round, *Kodak Mining Company v. Carrs Fork Corp.*, Ky., 669 S.W.2d 917 (1984), Kodak Mining insisted on its right to arbitrate and got it; it should now be prepared to accept the results absent proof of some illegality amounting to a fraud. Its various arguments claiming gross mistake of law are weak because, in each instance, there are specific terms in the contract/lease which arguably distinguish the present case from the authorities cited. This should be the end of the inquiry.

We should keep a clear line of demarcation between the standard for reviewing the decision of a lower court and an agreed arbitration. By failing to abide by the difference, the Majority Opinion strikes at the heart of the process of arbitration.

LAMBERT, J., joins this dissent.