**NORTH FORK COLLIERIES, LLC, Appellant,**

v.

**Barry Kevin HALL; Leetha Hall; Traveler Coal, LLC; and Community Trust Bank, Appellees.**

No. 2010–SC–000269–I.

Supreme Court of Kentucky.

Sept. 23, 2010.

Anne Adams Chesnut, Bruce Edward Cryder, Greenebaum, Doll & McDonald, PLLC, Lexington, KY, Counsel for Appellant.

Chauncey S. R. Curtz, Mindy Barfield, Dinsmore & Shohl, LLP, Lexington, KY, Marrs A. May, Pikeville, KY, Counsel for Appellees, Barry Kevin Hall; Leetha Hall; and Traveler Coal, LLC.

Catherine Marie Stevens, Patricia Kirkwood Burgess, Frost Brown & Todd, LLC, Lexington, KY, Counsel for Appellee, Community Trust Bank.

Opinion of the Court by Justice ABRAMSON.

North Fork Collieries LLC, a Delaware corporation with its principal place of business in Hazard, Kentucky, moves pursuant to CR 65.09 for relief from an Order of the Pike Circuit Court denying North Fork's motion to stay litigation brought against it and to compel arbitration. By Order entered April 12, 2010, the Court of Appeals denied relief on the ground that the trial court's ruling did not amount to an abuse of discretion and that North Fork had failed to show that an erroneous ruling would subject it to irreparable injury. For the reasons stated herein, we reverse and remand.

### RELEVANT FACTS

The underlying controversy concerns a February 2008 transaction between North Fork and the plaintiffs below, Barry Hall and Traveler Coal, LLC, a Kentucky corporation headquartered in Pikeville. Organized in 2001, Traveler is a coal-mining business and Barry Hall was its initial sole owner and manager. In November 2006, Traveler and Hall obtained a $6.3 million business loan from Community Trust Bank, Inc., of Pikeville. The loan was secured by various mortgages and other liens as well as by the personal guarantees of Hall and his wife, Leetha. In 2007, representatives of Prospect Capital Corporation, described by the parties as a New York-based private equity firm, approached Hall with an offer to buy his business and employ him as its manager. Following negotiations, the parties agreed that Hall would sell his business and its assets to Prospect's affiliate, North Fork, in exchange for North Fork's assumption of certain business debts, including the outstanding debt to Community Trust Bank, and North Fork's agreement to employ Hall as its manager.

The parties' agreements were memorialized in two writings: an "Employment Agreement" and an "Asset Purchase Agreement." To obtain Community Trust Bank's approval of the transfer of its collateral, North Fork, Hall, and Traveler also entered into an agreement with the Bank, the "Assumption Agreement," whereby Hall and Traveler agreed that they would continue to be bound under the original loan as guarantor and primary obligor, respectively, and North Fork agreed that the loan was to be amended so as to add it as an additional primary obligor. Under the Assumption Agreement,

North Fork and Traveler both promised the Bank, "absolutely, fully, irrevocably, personally, [and] unconditionally," to "jointly and severally assume [or remain] and be bound as ... joint and several primary obligor along with [the other]." Notably, all three agreements were executed on February 11, 2008.

In August 2009, North Fork notified Community Trust Bank of its intent to default on the loan, and later that month, as soon as the default became official, Hall, his wife, and Traveler (collectively "Hall") brought suit in Pike Circuit Court against North Fork and the Bank alleging breaches by North Fork of the Assumption Agreement and the Employment Agreement and seeking damages and declaratory relief. Citing choice of forum and arbitration provisions in both the Employment Agreement and Asset Purchase Agreement, North Fork thereupon moved to have the Complaint dismissed or stayed pending arbitration. The trial court denied those motions by Order entered October 13, 2009.

Pursuant to CR 65.07, North Fork then sought interlocutory review by the Court of Appeals. While the matter was pending before that Court, Hall filed notice of his intent to dismiss without prejudice his employment-related claims. The Employment Agreement was in that way taken out of play, and thus, according to Hall, the central issue remaining before the trial court is "who—as between North Fork and the Respondents [Hall]—is responsible for paying the CTB debt," an issue Hall has carefully couched in terms of the Assumption Agreement, which does not have an arbitration clause, rather than the Asset Purchase Agreement, which does. The Court of Appeals ruled that the trial court did not abuse its discretion by allowing Hall to go forward in circuit court on the purported Assumption Agreement claim because that agreement "arguably superseded the documents which did contain arbitration clauses." *North Fork Collieries, LLC v. Hall*, 2009–CA–002038–I (April 12, 2010). Thus, according to the Court of Appeals, North Fork will not be irreparably injured by having to litigate Hall's claim. We disagree. Because the Assumption Agreement cannot reasonably be thought to have superseded the detailed agreements made contemporaneously with it, and because it cannot settle the issue which Hall has raised in the Complaint, the trial court abused its discretion by relying on that agreement to deny North Fork's demand for arbitration.

### ANALYSIS

As the parties correctly note, under CR 65.09 this Court may grant interlocutory relief from an order of the Court of Appeals if the movant demonstrates "extraordinary cause," and we have held that " 'abuses of discretion by the courts below can supply such cause.' " *Board of Regents of Western Kentucky University v. Clark*, 276 S.W.3d 819, 822 (Ky.2009) (quoting from *NCAA v. Lasege*, 53 S.W.3d 77, 84 (Ky.2001)). In the arbitration context, we have recognized CR 65.07 and CR 65.09 as appropriate avenues for the review of trial court orders denying motions to compel arbitration, particularly when, as here, the KRS 417.220 right to an interlocutory appeal does not apply.[1] *Kindred*

---

1. KRS Chapter 417 contains the Kentucky Uniform Arbitration Act. Recently, in *Ally Cat, LLC v. Chauvin*, 274 S.W.3d 451 (Ky.2009), this Court held that a Kentucky circuit court has no jurisdiction under KRS 417.200 to enforce an arbitration agreement unless the agreement provides for arbitration in Kentucky. None of the agreements at issue in this case provide for arbitration in Kentucky and thus the KRS 417.220 interlocutory appeal right is not available.

*Hospitals v. Lutrell,* 190 S.W.3d 916 (Ky. 2006).

 Although motions to compel arbitration are in some ways akin to motions for injunctions under CR 65.04, they are significantly different as well. Whereas a typical request for a temporary injunction seeks to preserve the status quo pending a decision on the merits of some controversy, and thus raises questions about the movant's likely success on the merits and the risk of irreparable harm should the injunction be denied, *Maupin v. Stansbury,* 575 S.W.2d 695 (Ky.App.1978), a motion to compel arbitration seeks rather the specific performance of the asserted contractual right, *Vaden v. Discover Bank,* —— U.S. ——, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009), a right in many instances implicating either Kentucky's Uniform Arbitration Act, Kentucky Revised Statute (KRS) Chapter 417 (the "KUAA"), or, as here, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* Both the KUAA and the Federal Arbitration Act require that arbitration agreements be enforced no less rigorously than other contract provisions.[2] The task of the trial court confronted with such a motion, thus, is not to weigh the equities of the situation, to assess the merits of the underlying controversy, or to determine whether litigation would or would not "irreparably harm" the movant. Its task generally is simply to decide under ordinary contract law whether the asserted arbitration agreement actually exists between the parties and, if so, whether it applies to the claim raised in the complaint. *Id.; First Options of Chicago v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Oakwood Mobile Homes, Inc. v. Sprowls,* 82 S.W.3d 193 (Ky.2002). If an arbitration agreement is applicable, the motion to compel arbitration should be granted.

 Although injunctive relief is said to be within the sound discretion of the trial court, in this context that discretion extends no further than the correct application of the law, and accordingly we have held that the improper denial of a motion to compel arbitration warrants relief under CR 65.09. *Kodak Mining Company v. Carrs Fork Corporation,* 669 S.W.2d 917 (Ky.1984). The trial court's factual findings, if any, are reviewed for clear error, but its construction of the contract, a purely legal determination, is reviewed *de novo. American General Home Equity, Inc. v. Kestel,* 253 S.W.3d 543 (Ky.2008).

 It is true, as Hall and the Court of Appeals note, that under CR 65.04, temporary injunctive relief is only appropriate if without it the movant will suffer irreparable injury or the final judgment will be rendered ineffectual. Relying on writ cases, in which we have held that the ordinary costs and delays of litigation are not the sort of injury that will justify the extraordinary remedies of mandamus or prohibition, the Court of Appeals opined

---

**2.** Section 2 of the Federal Arbitration Act provides in part that "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Hall does not dispute that the Asset Purchase Agreement evidences a transaction involving interstate commerce. *Cf. Kodak Mining Company v. Carrs Fork Corporation,* 669 S.W.2d 917 (Ky.1984) (noting that coal mining contracts are generally deemed to involve interstate commerce.) Where it applies, the federal act is enforceable in State, as well as federal court, *Southland Corporation v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), and indeed "[u]nder the FAA, state courts as well as federal courts are obliged to honor and enforce agreements to arbitrate." *Vaden v. Discover Bank,* 129 S.Ct. at 1278.

that North Fork would not be irreparably injured by having to litigate Hall's claim.

■ The writ cases have no application in this context, however, where North Fork's claim to interlocutory relief is not based on the merely equitable assertion that the ordinary course of litigation and appeal will prove costly, but rather on its bargained-for contractual right to proceed in another forum. That right, if it exists, would be destroyed by requiring North Fork to proceed in the Pike Circuit Court and could not be vindicated by an ordinary appeal at the conclusion of the trial. *Bridgestone/Firestone d/b/a Firestone Industrial Products Company v. McQueen*, 3 S.W.3d 366 (Ky.App.1999). We have indicated, therefore, that in this context irreparable injury arises from an improper denial of a motion to compel arbitration and that the principal question on review is simply whether the trial court correctly decided the contract issue. *Kodak Mining, supra.* Where movants for interlocutory review under CR 65.09 have failed to address that question, we have declined to disturb facially reasonable trial court rulings, *Kindred Hospitals v. Lutrell, supra; Oakwood Mobile Homes, Inc. v. Sprowls, supra,* but here North Fork has adequately raised the contract issue. The Court of Appeals erred, therefore, by treating that issue as though review of it could be postponed until a final appeal without irreparably injuring North Fork's rights.

■ Turning to whether the parties' contracts provide for arbitration, this might, at first glance, appear to be an easy case. North Fork relies on the arbitration clause in the Asset Purchase Agreement, but Hall purports to be proceeding under the Assumption Agreement. The Asset Purchase Agreement and its arbitration clause might thus appear to be irrelevant and North Fork's reliance thereon misplaced. The trial court and the Court of

Appeals would then have been entirely correct in allowing the litigation to go forward. Upon even slightly closer scrutiny, however, it is apparent that notwithstanding Hall's artful pleading, the Assumption Agreement cannot and will not carry the burden Hall is asking it to, and that to settle the issue Hall has raised—who between Hall and North Fork is responsible for the outstanding debt to the Community Trust Bank—it will be necessary to have recourse to the Asset Purchase Agreement.

This conclusion is clear from the provisions of the Assumption Agreement quoted above, upon which Hall purports to base its claim. Under that agreement North Fork and Traveler each agreed "absolutely, fully, irrevocably, personally, [and] unconditionally," to be bound as joint and several primary obligors for the Community Trust Bank loan. Hall asserts that North Fork's default breached that agreement, but even if it did, North Fork's promise was to the Bank, not to Traveler, as fellow primary obligor, or to Hall, as guarantor, and the breach, therefore, would not give either of them a cause of action. Even were they deemed third-party beneficiaries of North Fork's promise to the Bank, the benefit they would be entitled to is only that North Fork could be held jointly and severably liable for the loan debt. The Assumption Agreement, in short, concerns North Fork's and Hall's relationship with the Community Trust Bank, not with each other. It has nothing to say about which of them, if either, is responsible to the other for the Bank debt and thus it cannot resolve the issue Hall seeks to litigate.

This is hardly surprising given the fact that in conjunction with the Assumption Agreement the parties executed the Asset Purchase and Employment Agreements, in which their relationship with each other

was spelled out in considerable detail. The Asset Purchase Agreement is twenty-six pages long; the Employment Agreement is seventeen pages. The Court of Appeals' suggestion that these lengthy agreements might be deemed superseded by the *contemporaneously executed,* four-page Assumption Agreement is simply illogical. Nothing in the Assumption Agreement remotely suggests such an intention. The Court of Appeals may have been focusing on the Assumption Agreement's merger clause, which provides in pertinent part that "[t]his Agreement and the Loan Documents and any amendments thereto referred to herein constitute the entire understanding between the parties with respect to the subject matter hereof and supersede all prior or contemporaneous agreements in regard thereto," but as noted already the "subject matter" of the Assumption Agreement is the relationship between the parties and the Community Trust Bank. That agreement does not address Hall's and North Fork's relationship with each other, and was clearly not meant to merge or supersede the detailed agreements which do expressly address that relationship.

That Hall's claim in fact, if not in form, relies on the Asset Purchase Agreement is apparent from reading the Complaint, where the Asset Purchase Agreement, *not* the Assumption Agreement, is identified as the source of North Fork's obligation both to Traveler and to Hall and his wife, to repay the Community Trust Bank loan as well as its obligation to indemnify those Plaintiffs for any amounts which they are required to pay in the event of North Fork's default. We agree with North Fork, therefore, that notwithstanding Hall's attempt to plead around the Asset Purchase Agreement, that Agreement is necessarily the foundation for Hall's claim against North Fork and, therefore, its arbitration clause is relevant.

That clause, headed *"Arbitration and Jurisdiction,"* provides in its entirety as follows:

EACH PARTY HERETO EXPRESSLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO TRIAL BY JURY OF ANY DISPUTE RELATING HERETO, INCLUDING ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING IN CONNECTION WITH THIS AGREEMENT, ANY TRANSACTION RELATING HERETO OR THERETO, OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR THEREWITH, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. EACH PARTY HERETO CONSENTS AND AGREES THAT THE STATE OR FEDERAL COURTS LOCATED IN NEW YORK COUNTY, NEW YORK SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN OR AMONG ANY OF THE PARTIES HERETO PERTAINING TO THIS AGREEMENT, THE TRANSACTION, AND INVESTIGATION, LITIGATION, OR PROCEEDING RELATED TO OR ARISING OUT OF ANY SUCH MATTERS, ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY TO THIS AGREEMENT PROVIDED THAT THE PARTIES HERETO ACKNOWLEDGE THAT ANY APPEALS FROM THOSE COURTS MAY HAVE TO BE HEARD BY A COURT LOCATED OUTSIDE OF SUCH JURISDICTION AND THAT ANY SUCH DISPUTE MUST FIRST BE SUBMIT-

TED TO BINDING ARBITRATION. EACH PARTY HERETO EXPRESSLY AGREES NOT TO ASSERT ANY CLAIM RELATING HERETO ELSEWHERE, BUT INSTEAD SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT, AND HEREBY WAIVES ANY OBJECTION WHICH SUCH PARTY MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR INCONVENIENT FORUM.

(capitalization of text in original).

 Hall argued below and suggests here that even if the Asset Purchase Agreement is applicable, this arbitration clause is so ambiguous as to be unenforceable. Generally, of course, in construing contracts courts endeavor to give effect to the parties' intent as expressed by the ordinary meaning of the language they employed. *Island Creek Coal Company v. Wells*, 113 S.W.3d 100 (Ky.2003); *Siler v. White Star Coal Company*, 190 Ky. 7, 226 S.W. 102 (1920). Although not, perhaps, a model of lucid draftsmanship, the quoted provision nevertheless evidences the parties' intent that disputes "pertaining to this agreement [the Asset Purchase Agreement]" "must first be submitted to binding arbitration," and, if litigation ensues, litigated in New York County, New York. The mere fact that the clause addresses litigation as well as arbitration does not, as Hall suggests, render the provision ambiguous; the parties could have waived arbitration in favor of litigation and thus brought the litigation provisions into play immediately but, even where parties opt for arbitration initially, litigation frequently follows as the parties seek to enforce or challenge the arbitration award. Because, as discussed above, Hall's claim that North Fork is liable to it for the Community Trust Bank loan is founded on the parties' obligations set forth in the Asset Purchase Agreement, the Agreement's arbitration clause applies, and the Pike Circuit Court abused its discretion by failing to give the arbitration clause effect.

 Finally, Hall asserts that because the Complaint involves parties—Hall individually and his wife, as co-guarantors of Traveler's debt to the Community Trust Bank, and the Bank itself—who were not parties to the Asset Purchase Agreement, the trial court could reasonably conclude that the matter should be litigated rather than arbitrated. Indeed, the United States Supreme Court has held that because the Federal Arbitration Act does not provide for scenarios in which some parties are and others are not subject to an arbitration agreement, parties to arbitration agreements may, without running afoul of the FAA, opt for State procedural rules that give the court discretion to stay arbitration pending related litigation. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). The parties here, however, have not opted for such an alternative rule, and under the FAA related litigation is to be stayed, if necessary, to allow for arbitration, not the other way around. *Rodriguez v. American Technologies, Inc.*, 136 Cal.App.4th 1110, 39 Cal.Rptr.3d 437 (2006). The issue is a non-starter here, moreover, because again it is more a matter of artful pleading than substance. Hall named the Bank as a defendant, but as the Bank has correctly noted in filings with this Court, it is not a necessary party to the dispute between Hall and North Fork. Under the Assumption Agreement, the Bank may seek to recoup the outstanding balance on its loan from either or both of the joint primary obligors or from the guarantors, and need not address the

question of priority among them or their rights vis-à-vis each other. The Bank's claim, therefore, has no bearing on the arbitrability of Hall's claim against North Fork.

Likewise, whatever claim Hall and his wife, as guarantors of Traveler's debt, may have against North Fork, it does not derive from the Assumption Agreement, which gives them no rights against North Fork just as it gave no rights to Traveler. If their claims arise from their status as third-party beneficiaries of the Asset Purchase Agreement, and that appears to be what the Complaint in fact asserts, then even though they were not signatories to that Agreement they would be estopped from disavowing that Agreement's arbitration provision. *See Thomson–CSF, S.A. v. American Arbitration Association,* 64 F.3d 773 (2nd Cir.1995) (discussing theories for binding nonsignatories to arbitration agreements, including the estoppel theory, whereby a third-party who knowingly accepts a direct benefit under the contract may be held to the contract's arbitration clause). Here, Hall and his wife are claiming the direct benefit of the Asset Purchase Agreement's loan assumption and indemnity provisions so they are estopped from disavowing the Agreement's arbitration provision.

### CONCLUSION

In sum, while CR 65.09 reserves interlocutory relief from injunctive rulings for instances of extraordinary cause, our cases recognize that a trial court's improper denial of a motion to compel arbitration can supply that cause. Such is the case here. Although Hall, his wife and Traveler have taken pains to allege that North Fork breached the Assumption Agreement, not the Asset Purchase Agreement, the rights they assert all derive from the latter Agreement, not the former, and thus their claim plainly implicates the Asset Purchase Agreement's arbitration clause. By exalting the form of the Complaint over its substance, the trial court deviated from the Federal Arbitration Act's mandate that arbitration agreements be enforced and, consequently, abused its discretion. The Court of Appeals erred by ruling otherwise. Accordingly, we reverse the April 12, 2010 Order of the Court of Appeals and remand to the Pike Circuit Court for entry of an order granting North Fork's motion to stay litigation so that the claims asserted by Barry and Leetha Hall and Traveler Coal, LLC, against North Fork may be submitted to arbitration.

MINTON, C.J.; CUNNINGHAM, NOBLE, and VENTERS, JJ., concur. SCHRODER, J., dissents without opinion. SCOTT, J., not sitting.