RENDERED: JULY 22, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0149-I

PSC INDUSTRIES, INC.                                                   MOVANT

|  | MOTION FOR INTERLOCUTORY RELIEF ARISING FROM KENTON CIRCUIT COURT |
|---|---|
| v. | HONORABLE PATRICIA M. SUMME, JUDGE ACTION NO. 21-CI-01023 |

TOYOTA BOSHOKU AMERICA, INC.                          RESPONDENT

<u>OPINION AND ORDER</u>
<u>GRANTING MOTION FOR INTERLOCUTORY RELIEF</u>

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; DIXON AND K. THOMPSON, JUDGES.

CLAYTON, CHIEF JUDGE: This matter comes before the Court on a motion by Movant, PSC Industries, Inc. (PSC), for interlocutory relief under CR[1] 65.07. PSC challenges an order entered by the trial court on January 21, 2022, denying its

---

[1] Kentucky Rules of Civil Procedure.

motion to compel Toyota Boshoku America, Inc. (TBA) to submit to arbitration and granting TBA's motion to stay arbitration. Having reviewed the record, and otherwise being sufficiently advised, it is hereby ORDERED that PSC's motion for interlocutory relief shall be, and hereby is, GRANTED.

## I.    BACKGROUND

PSC is a manufacturer of automotive parts. TBA is a consumer of those parts. The parties have an ongoing relationship as seller and buyer. Each has a set of standard terms and conditions which it utilizes when doing business. The central question in the case *sub judice* is which of these terms and conditions, if either, governs the parties' relationship.

In 2021, PSC filed an arbitration demand with the American Arbitration Association (AAA). The demand alleges TBA aided and abetted a former PSC employee, Gary Young, in breaching fiduciary duties owed by him to PSC. PSC alleges Young opened a competing business while serving as a highly compensated executive of PSC. In short, PSC contends that TBA tortiously purchased goods from Young's competing company under a variety of theories of recovery. The merits of the arbitration dispute are beyond the scope of this Opinion and Order.

PSC provided price quotes to TBA on various component parts by way of documents entitled "quotation(s)." The quotations provided of record

contain several key terms including part number, description, volume, lead time, and place of delivery.  Each quotation contains "Terms and Conditions of Sale." The relevant terms and conditions of the quotations introduced as evidence in this case include:

> 1.  The terms contained herein shall control the parties' transaction.  These terms may not be waived, varied or changed, nor are additional terms added by the Buyer acceptable, except as consented to in a writing signed by the authorized agent of [PSC].  [TBA's] acceptance is expressly limited to [PSC's] terms, notwithstanding any provision contained in [TBA's] forms.
>
> . . .
>
> 4.  The parties agree that any dispute arising between them shall be subject to the jurisdiction of the courts of the State of California, County of Los Angeles and that the laws of the state of California shall control the parties' transaction.

A quotation does not have a signature line for a buyer such as TBA. After receiving a quotation, TBA issues a "framework letter agreement" to PSC. This agreement references TBA's own terms and conditions, which include a requirement that "any dispute arising under the Contract Documents or the parties' obligations thereunder" be resolved by a single arbitrator "in accordance with the Commercial Arbitration Rules of the [AAA.]"

## II. STANDARD OF REVIEW

A motion for interlocutory relief under CR 65.07 is an appropriate vehicle for PSC to seek review of the trial court's order denying its motion to compel. This method was noted with approval in *Kindred Hospitals Ltd. Partnership v. Lutrell*, 190 S.W.3d 916 (Ky. 2006), which involved a wrongful death claim against a nursing home. The nursing home filed a motion for interlocutory relief under CR 65.07 after the trial court denied a motion to dismiss or, in the alternative, to stay pending arbitration. The Kentucky Supreme Court held that the nursing home could proceed under a motion for CR 65.07 relief as "a denial of a motion to compel arbitration and to stay litigation is akin to a denial of an injunction." *Id*. at 919.

An appellate court reviews *de novo* the trial court's application of rules governing the validity of an arbitration contract, but the court's factual findings, if any, will be disturbed only if clearly erroneous. *Frankfort Medical Investors, LLC v. Thomas by and Through Thomas*, 577 S.W.3d 484, 487 (Ky. App. 2019). As such, this Court applies the analysis set forth in *Padgett v. Steinbrecher*, 355 S.W.3d 457, 459 (Ky. App. 2011) (citations omitted):

> In reviewing an order denying enforcement of an arbitration clause or agreement, we apply a two-fold standard of review. First, we examine the trial court's findings of fact. Those factual findings are reviewed under the clearly erroneous standard and are deemed conclusive if they are supported by substantial evidence.

-4-

Second, we review the circuit court's legal conclusions *de novo* to determine if the law was properly applied to the facts.

While no published case addresses the issue, the question of whether a meeting of the minds created a binding contract is one of law, subject to *de novo* review. As the Kentucky Supreme Court observed in *Central Bank v. Gill*, No. 2011-SC-0442-DG, 2013 WL 5436257, at *4 (Ky. Sep. 26, 2013) (citations omitted):

> We believe in the case sub judice that whether there was a meeting of the minds and, thus, an enforceable contract is an issue of law to be determined by the court. Generally, the construction of a contract is a matter of law. Furthermore, the parties have presented us with no factual disputes regarding whether the agreement reached at the Master Commissioner's hearing constituted a meeting of the minds, as the entire stipulated settlement agreement is on the record.

Kentucky law also dictates that appellate courts treat a CR 65.07 motion concerning an arbitration agreement differently than a typical grant or denial of an injunction. The inquiry in this context acts more as an interlocutory appeal. CR 65.07(3)(b) provides that the basis for relief under CR 65.07 is identical to the grounds specified in CR 65.04(1). Thus, the rule generally requires a showing that "the movant will suffer immediate and irreparable injury, loss, or damage pending a final judgment in the action, or the acts of the adverse party will tend to render such final judgment ineffectual." CR 65.04(1). The Kentucky

Supreme Court has held, however, that in the context of an improper denial of a motion to compel arbitration, this immediate and irreparable harm is presumed. *North Fork Collieries, LLC v. Hall*, 322 S.W.3d 98, 102 (Ky. 2010). With these principles in mind, we turn to the instant case.

### III.   ANALYSIS

The only question before us is whether the parties had a binding agreement to arbitrate. It is well established the party seeking to compel arbitration bears the burden of proving, in the first instance, the existence of an agreement to arbitrate. *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 590 (Ky. 2012). Under both the Federal Arbitration Act, 9 U.S.C.[2] § 2 (FAA), and the Kentucky Uniform Arbitration Act (KUAA), KRS[3] 417.045, "[t]hat question is controlled by state law rules of contract formation." *Genesis Healthcare, LLC v. Stevens*, 544 S.W.3d 645, 649 (Ky. App. 2017).

PSC argues the trial court erred in ruling that the "knockout rule" applied to the fulfillment of orders between the parties. We agree. This is a matter of contract formation, not construction.

KRS 355.2-207 codifies the knockout rule, and provides, in relevant part, as follows:

---

[2] United States Code.

[3] Kentucky Revised Statutes.

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract . . . .

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this chapter.

KRS 355.2-207 is not applicable to this case. Each transaction between the parties ends with PSC accepting TBA's terms in a written agreement. The framework letter agreements are signed by both parties and therefore exhibit an intent by both to be bound by their terms. The Court need not resort to the knockout rule because the parties have executed a written contract. Courts may resort to extrinsic evidence to resolve an ambiguity in a contract but not to create an ambiguity where none exists. *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003).

The Kentucky Uniform Commercial Code codifies the parol evidence rule at KRS 355.2-202. The framework letter agreements in question constitute a

"writing intended by the parties as a final expression of their agreement[,]" and therefore "may not be contradicted by evidence of any prior agreement" except as may be explained or supplemented under circumstances not present here. *Id.*

The trial court's ruling hinges on a lack of a meeting of the minds, merely because PSC had at one time proposed terms different than those ultimately accepted. This concept has no application when the parties have entered into a subsequent written agreement.

We decide today only that an agreement to arbitrate exists between the parties. This agreement is governed by the FAA, which applies to arbitration agreements within a contract or transaction involving interstate commerce. 9 U.S.C. § 2. The FAA requires that the trial court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall . . . stay the trial of the action until such arbitration has been had[.]" 9 U.S.C § 3. This federal statute is enforceable in Kentucky state courts. *Kodak Min. Co. v. Carrs Fork Corp.*, 669 S.W.2d 917, 919 (Ky. 1984). *See also North Fork Collieries, LLC*, 322 S.W.3d at 102 n.2.

The question remains as to whether this particular claim is governed by the arbitration agreement between the parties. The trial court did not reach this issue, as it found that no agreement to arbitrate existed. The AAA Commercial Arbitration Rules provide that the "arbitrator shall have the power to rule on his or

her own jurisdiction, including . . . the arbitrability of any claim or counterclaim." While courts retain the right and responsibility to determine whether an agreement to arbitrate exists, voluntary adoption of similar AAA rules properly transfers the power to "arbitrate the arbitrability" to an arbitrator. *Ally Align, Inc. v. Signature Advantage, LLC*, 574 S.W.3d 753, 756 (Ky. 2019) (emphasis omitted) (citing American Arbitration Association, *Commercial Arbitration Rules & Mediation Procedures,* R-7(a) Jurisdiction (Oct. 1, 2013)) (available at https://www.adr.org/sites/default/files/CommercialRules_Web.pdf) (last accessed Jul. 15, 2022).

## IV.   CONCLUSION

For the reasons set forth above, PSC's motion for intermediate relief under CR 65.07 is hereby GRANTED.  This case is remanded to the trial court with instructions to enter an order granting PSC's motion to compel arbitration and to stay the underlying action pending completion of the arbitration process.


ALL CONCUR.


ENTERED:  July 22, 2022_____          _____
                                                       CHIEF JUDGE, COURT OF APPEALS

COUNSEL FOR MOVANT:             COUNSEL FOR RESPONDENT:

David S. Kaplan                 Kevin L. Murphy
Casey L. Hinkle                 Nicholas R. Gregg
Louisville, Kentucky            Fort Mitchell, Kentucky