**Charles D. LYNCH, Appellant,**

v.

**CLAIMS MANAGEMENT CORPORATION,**
**Appellee.**

**No. 2007–CA–001840–MR.**

Court of Appeals of Kentucky.

Jan. 22, 2010.

As Modified Feb. 26, 2010.

Kevin C. Burke and Michael Stevens (argued), Louisville, KY, for appellant.

Russell H. Saunders (argued), Louisville, KY, Robert W. Fenet, pro hac vice, Baton Rouge, LA, for appellee.

Before CLAYTON, DIXON, and WINE, Judges.

## OPINION

WINE, Judge.

Charles D. Lynch ("Lynch") appeals from a Jefferson Circuit Court summary judgment awarding Claims Management Corporation ("CMC") $66,172.96 from the settlement proceeds Lynch received from Kentucky Farm Bureau ("KFB"), his uninsured motorist carrier. Lynch further appeals the court's denial of his cross motion for summary judgment seeking dismissal of CMC's intervening complaint. For the reasons stated herein, we reverse and remand.

### Factual and Procedural Background

On December 1, 2003, Lynch, an independent contractor, was delivering medical devices in Evansville, Indiana. Jose Y. Lagumes ("Lagumes"), an uninsured motorist, rear-ended Lynch's automobile while Lynch was stopped for a red light. Lynch suffered serious injuries, incurring medical expenses of more than $38,000 and lost wages. As a result of the collision, Lynch never returned to work.

As an independent contractor, Lynch was not covered by a workers' compensation policy, nor had he secured any health insurance coverage. However, he was insured through KFB, covered by two "stacked" uninsured motorist (UM) provisions totaling $200,000. He was further covered by a disability policy styled Occupational Accident Plan ("the Plan"). The Plan was issued by Certain Interested Underwriters with Lloyd's, London ("Lloyd's") and purchased through National Independent Contractors Association ("NICA").[1] Gallagher Bassett Services, Inc./Claims Management Corporation was the claims administrator. The maximum total aggregate benefit under the Lloyd's policy was $400,000.

On December 9, 2003, Lynch retained the services of a lawyer. He also contacted CMC. On December 11, 2003, Katrina Greene ("Greene"), a claims adjuster for CMC, sent a Reimbursement Agreement form as well as a cover letter to Lynch. The letter explained that before any funds could be disbursed, Lynch would be required to sign the form and have his signature notarized. The letter further explained that the form would allow for reimbursement to the Plan from a third party who may be responsible for any injury or illness involved. Lynch signed the Reimbursement Agreement on December 19, 2003. In part, the Reimbursement Agreement provided,

1. The LN has a right to be reimbursed to the extent of the benefits paid or to be paid on behalf of BENEFICIA-

---

1. A copy of the Plan provided by Gallagher Transportation Services advised there was a "Master Plan" (policy No. 322550S) issued by Lloyd's and retained by NICA.

RY by reason of injuries and damages sustained by BENEFICIARY as a result of an occurrence on or about 12–1–2003 at or near the City of Evansville, IN, which occurrence is believed to have been caused by Accident.

2. The LN, its successors and assigns, is authorized to collect, compromise, or sue in BENEFICIARY'S name(s) for the amount of benefits paid or to be paid by it in the event BENEFICIARY does not pursue, make claim, or file suit for his or her injury and damages.

3. In the event that BENEFICIARY should file or has filed suit or claim against any person, firm, or corporation for the injuries and damages sustained as a result of the occurrence on or about the above referenced date, the LN, its successors and assigns, shall be paid from the proceeds thereof to sufficiently reimburse the LN for the amount of benefits paid or to be paid by it.

His signature was witnessed on the same day by Mary J. Drury, a notary public. The form was stamped received by CMC on December 31, 2003, and disability payments began.

The Claim Notebook maintained by CMC details communications between CMC and Lynch, as well as KFB. CMC learned that KFB had been paying disability benefits in addition to the amounts paid by CMC. CMC advised Lynch he was not eligible to receive benefits from both insurers and then reduced the $393.97 weekly payment it was paying by $200 to reflect the weekly benefit paid by KFB. When contacted by Lynch's attorney, the Claim Notebook reflects the same information was provided.

Lynch received Personal Injury Protection (PIP) payments from KFB totaling $10,000 for wage loss and $1,000 for medical expenses. It is undisputed that Lynch received $66,172.96 in occupational benefits from Lloyds for medical expenses and disability.

On November 30, 2005, Lynch filed suit against KFB, his uninsured motorist carrier.[2] In his February 2006 answers to interrogatories, Lynch claimed nearly $312,000 in compensatory and special damages. Lynch claims this amount was in addition to those proceeds already paid by CMC. After receiving notice of the suit, CMC filed a motion to intervene on April 21, 2006, seeking recovery of the $66,172.96 paid on behalf of or to Lynch. CMC claimed it paid $38,329.47 for medical expenses and $27,843.49 for disability payments. On May 12, 2006, over Lynch's objections, the court granted CMC's motion to intervene. On May 24, 2006, following an arbitration meeting, Lynch and KFB agreed to a settlement of $160,000. KFB and Lynch entered into a release whereby Lynch released all claims against KFB and further agreed to indemnify KFB for all claims asserted against it by others including CMC. CMC subsequently voluntarily dismissed any claim against KFB. Pursuant to an order on June 6, 2006, the disputed amount claimed by CMC was placed in an escrow account.

CMC filed a motion for summary judgment, contending Lynch's right to the $160,000 paid by KFB is subordinate to CMC claim for reimbursement. CMC further argued that Lynch had breached the insurance contract. Lynch also filed a motion for summary judgment. Oral arguments were held in December 2006. The trial court agreed with the arguments of

**2.** Lynch apparently filed a suit against the uninsured motorist by a separate action in Indiana. However, neither Lagumes nor the owner of the vehicle was named by Lynch as a co-defendant in this action before the Jefferson Circuit Court.

CMC that whether Lynch should be required to reimburse CMC for expenditures for medical payments and lost wages depended solely on contract interpretation. The court found the Plan was a contract between Lynch and CMC, providing benefit payments for Lynch's injuries conditioned on his agreeing to reimburse CMC from any third party payments that he may receive. While Lynch argued that a "third party" as used in the contract is limited to the actual tortfeasor, CMC argued there was no such limitation and to so hold would impermissibly add language to a contract that was clear and unambiguous. The trial court found that, pursuant to the Conditional Claim Payment provision of the Plan, Lynch was obligated to reimburse CMC the $66,172.96 paid on his behalf or paid directly to him.

On May 17, 2007, the trial court granted CMC's motion for summary judgment and simultaneously denied Lynch's motion for summary judgment. On September 7, 2007, the trial court denied Lynch's motion to vacate the May 17, 2007 order and instead designated the order for Lynch to reimburse CMC as final and appealable. This timely appeal followed.

### Analysis

Lynch raises four issues on appeal to support his contention that he was entitled to summary judgment.[3] First, he challenges whether CMC is a real party in interest capable of asserting a subrogation/reimbursement claim. Next, because CMC never produced the "Master Policy," the terms of the contract between Lynch and Lloyds were not proven. Thirdly, Lynch contends that KFB, the uninsured motorist (UM) carrier, is not the "third party" which may be liable under the terms of the Plan. Finally, even if entitled

to reimbursement, CMC should not have received the full amount of the claim.

In reviewing a motion for summary judgment, a trial court must consider all stipulations and admissions on file. CR 56.03. Summary judgment is only proper where a movant shows that the adverse party could not prevail under any circumstances. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991), *citing Paintsville Hospital Co. v. Rose*, 683 S.W.2d 255 (Ky.1985). "The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996), *citing* CR 56.03. "There is no requirement that the appellate court defer to the trial court since factual findings are not at issue." *Scifres, supra, citing Goldsmith v. Allied Building Components, Inc.*, 833 S.W.2d 378, 381 (Ky.1992). Because these summary judgments involve only questions of law and not the existence of any disputed issues of fact, this Court need not defer to the trial court's decision and will review the issue *de novo*.

■ The trial court held CMC's claim was a simple contract issue. Generally, the construction and interpretation of a contract is a matter of law and is also reviewed under the *de novo* standard. *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. App.1998); *Coleman v. Bee Line Courier Service, Inc.*, 284 S.W.3d 123 (Ky.2009). While Lynch challenges the court's judgment and order on several grounds, the first two are easily resolved. Lynch failed to produce any affirmative evidence to challenge CMC's position that it was a

---

3. While Lynch's appellant brief includes six issues, we will confine our discussion to those listed in his pre-hearing statement. Kentucky Rules of Civil Procedure ("CR") 76.03(8).

party to all reimbursement agreements executed pursuant to the policies of the insurance issued by Lloyds under the NICA plan.[4] The reimbursement agreement set out above clearly allows for Lloyds to assign any reimbursement claim to a successor or other assignee. *See Ratcliff v. Smith,* 298 S.W.2d 18 (Ky.1957).

In his answer to requests for admissions, Lynch answered that the policy attached to CMC's request for admissions appeared to be a true and correct copy of a policy obtained through his former employer, NICA. Further, Robert Borgelt ("Borgelt"), an Area Senior Vice President for Gallagher Risk Management Services, Inc., an independent insurance brokerage company, acknowledged a copy of the plan identified by Lynch was in fact the policy which payments were made to and for the benefit of Lynch by CMC. Although he challenged the failure to produce a "Master Policy" when he filed his motion to vacate the order of May 17, 2007, Lynch produced no affirmative evidence to dispute Borgelt's averment that there was no separate document labeled "Master Policy."

It is Lynch's third challenge, the interpretation of third party liability, which is pivotal in our analysis. Lynch argues persuasively that the language in paragraph 26 of the *General Provisions of the Plan* is both ambiguous and subject to a reasonable interpretation that Lloyds would seek reimbursement from a third party tortfeasor.

Included in paragraph 26 is the following language:

Conditional Claim Payment

If an Insured Person suffers a covered injury received in an Accident; and for which, in the opinion of the Underwriters', a third party may be liable; the

Underwriters' will pay the amount of the benefits that would be paid under the Master Policy. However, the Insured Person must first agree in writing to refund the lesser of:

a. the amount actually paid by the Underwriters' for such covered Accident; or

b. an amount equal to the sum actually received from the third party for such covered Accident.

At the time such third party liability is determined and satisfied, this amount shall be paid whether determined by settlement, judgment, arbitration or otherwise. If the Insured Person does not receive payment from a third party for such Covered Accident, the Underwriters reserve the right to subrogate against the Third Party.

We are mindful that Kentucky courts have consistently held that "[w]here the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." *Kemper Nat. Ins. Companies v. Heaven Hill Distilleries, Inc.,* 82 S.W.3d 869, 873 (Ky.2002).

The meaning of the term "third party" is not defined in the section styled "definitions," nor in any subsection of the general provision segment of the policy. Confusion is created by the language which allows the Underwriters to determine when a third party may be liable. Additionally, it is not clear whether liability is confined to tortious acts or contractual obligations.

Further, both the letter and the Reimbursement Agreement from CMC strongly imply that it would seek recovery from an at-fault party. The first sentence of the December 11, 2003 letter states, "The Occupational Accident Plan provides for reimbursement if a third Party who may be

---

4.  Affidavit of Brenda Cullinan, Branch Man-   ager for CMC.

responsible for your injury or illness is involved." The Reimbursement Agreement is couched in terms of "injuries and damages sustained by BENEFICIARY as a result of an occurrence on or about 12–1–2003 ... to have been caused by Accident."

The trial court rejected Lynch's argument that only a tortfeasor should be considered a third party. We disagree. Our Courts have held that "[a] contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent, yet reasonable, interpretations." *New Life Cleaners v. Tuttle*, 292 S.W.3d 318, 322 (Ky.App.2009) (internal citations omitted). "[W]hen a contract is susceptible of two meanings, it will be construed strongest against the party who drafted and prepared it." *B. Perini & Sons v. Southern Ry. Co.*, 239 S.W.2d 964, 966 (Ky.1951) (internal citation omitted). The only purpose of judicial construction is to remove ambiguity and doubt and to make certain that which in itself is uncertain. *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky.2003).

A reasonable person may well expect that the language "third party" would be limited to tortfeasors, not one's own insurer. Under the "reasonable expectations" doctrine, ambiguous terms in an insurance contract must be interpreted in favor of the insured's reasonable expectations and construed as an average person would construe them. But "[o]nly actual ambiguities, not fanciful ones, will trigger application of the doctrine." *True v. Raines*, 99 S.W.3d 439, 443 (Ky.2003). We find the conundrum of who is defined as a third party to be a real ambiguity and one created by Lloyds and CMC. A simple definition, or even additional language in paragraph 25 dealing with limitation on recovery under the Plan when other policies are involved, could have resolved the issue. *Leingang v. Pierce County Medical Bureau, Inc.*, 131 Wash.2d 133, 137, 930 P.2d 288, 291 (1997). (Language in an insurance contract excluding recovery when uninsured or underinsured motorist coverage benefits are paid.)

Not only does this appear to be a case of first impression in Kentucky, but we recognize there is no clear consensus in other jurisdictions as to whether a health care contractor has a subrogation right (under contractual or equitable terms) against a UIM/UM carrier or UIM/UM proceeds.

We find persuasive the analysis and holding in *Cleland v. City of Lake Charles*, 840 So.2d 686 (La.App. 3 Cir.2003), which interprets nearly identical reimbursement language in the policy as that included in Lloyds' policy and CMC's Reimbursement Agreement.

Reimbursement

There shall be no coverage for expenses incurred by an Insured:

1. as a result of an injury or sickness which is claimed by the insured to have been the result of an act or omission of a third party; and

2. for which payment is made to or on behalf of the Insured by such third party.

If a claim is made to the Company for expenses:

1. covered under the policy; and

2. for which, in the opinion of the Company, a third party may be liable; the company will pay benefits, provided the Insured agrees, in writing, to reimburse the Company when payment is made by such third party.

The Company's right to reimbursement will be limited to the lesser of:

1. the amount of benefits paid by the Company; or

2. the amount paid by the third party which represents reimbursement to the Insured for such expenses.

Any payment for reimbursement of expenses incurred as a result of injury or sickness which is made by a third party's insurance carrier(s) will be deemed to be payment by the third party ...

*Cleland, supra,* at 698.

Even though the Clelands signed a separate reimbursement agreement, agreeing to "reimburse Washington National ... for payments made to [them] by a third party on account of said injury or sickness." *Id.,* the Louisiana Court found that neither the health insurance carrier nor Cleland's employer were entitled to reimbursement from the settlement funds paid by the UM/UIM carrier.

In *Suchy v. Illinois Farmers Ins. Co.,* 574 N.W.2d 93 (Minn.App.1998), the Minnesota Court held a health insurer did not have an equitable subrogation right against UIM award. The Ohio Court of Appeals held in *Csik v. Blue Cross & Blue Shield of Ohio,* 109 Ohio App.3d 9, 671 N.E.2d 1028 (1996), that the health insurer did not possess a contractual subrogation right against the UM carrier as "responsible third party" is an ambiguous term. Likewise, in *Employers Health Ins. v. General Cas. Co. of Wisconsin,* 161 Wis.2d 937, 469 N.W.2d 172 (1991), the Wisconsin Supreme Court concluded that the health insurer did not possess a contractual sub-

rogation right against the UM carrier where the health insurer was subrogated to the insured's "right to recover damages from a responsible third party", and further concluding that the health insurer had no equitable subrogation right against the UM carrier. *Dailey v. Secura Ins. Co.,* 164 Wis.2d 624, 476 N.W.2d 299 (Wis.App. 1991) (health insurer did possess a contractual subrogation right against the UM carrier, as "any party who may be liable" is not limited to wrongdoers and includes other insurers).

Because we believe that the language of the insurance contract is ambiguous and that the trial court erred when it entered summary judgment in favor of CMC while at the same time dismissing the summary judgment motion of Lynch, it is not necessary to address the remaining issue raised by Lynch.

For the foregoing reasons, the judgment of the Jefferson Circuit Court is reversed and remanded with instructions to enter a summary judgment in favor of Lynch dismissing CMC's intervening complaint.

ALL CONCUR.