JPMORGAN CHASE BANK, N.A.
(Successor by Merger to Bank
One, NA), Appellant

v.

BLUEGRASS POWERBOATS;  and
James D. Taylor, Appellees.

No. 2011–SC–000668–DG.

Supreme Court of Kentucky.

March 20, 2014.

Dustin Elizabeth Meek, Katherine Ellen McKune, Tachau Meek PLV, Louisville, KY, Counsel for Appellant.

F.J. Anderson, Barbara Anderson, Lexington, KY, Counsel for Appellees.

Opinion of the Court by Justice NOBLE.

This case is procedurally unusual and presents several questions about the trial court's authority to revisit its interlocutory orders and the existence and enforcement of arbitration agreements. But the dispositive question in this case is whether the trial court had the authority to set aside an order compelling arbitration under a purported arbitration agreement after the arbitrator had rendered a dispositive order, or instead was compelled to confirm the arbitration order. This Court holds that because the matter was not final and there was insufficient proof of the existence of a valid arbitration agreement, the trial court properly set aside its earlier order. For these reasons, the Court of Appeals is affirmed.

## I. Background

Bluegrass Powerboats, Inc. (Powerboats), a retailer of motorboats and watercraft supplies, was owned by Appellee James Taylor and his wife. Gregory Shearer, an employee of Powerboats, offered to buy the business from the Taylors, and they entered into an asset purchase agreement. Prior to completion of the sale, Taylor exited the business, and the next day, Shearer began operating the business as Bluegrass Marine.

To complete the financial transaction, Taylor opened a savings account with the Appellant, Chase Bank,[1] in which he deposited a check from Shearer for $123,102, the purchase price of the former Powerboats. The next day, he visited the bank and was told that the money had been credited to his account, and he withdrew $9,000 in the form of a certified check. Two days later, the bank sent Taylor a letter stating that the check he had deposited had been returned for insufficient funds, and that his account had been debited $123,102, the amount of the deposited check. Because he had already withdrawn money, the debit left Taylor overdrawn on the account. The record does not reveal how this affected the business, and that is not relevant to this action. It is apparent, however, that Taylor never got paid the $123,102 for his business.

Taylor then sued Chase Bank in Jessamine Circuit Court because the bank had failed to pay or return an NSF check by midnight of the day the check was deposited when the check was drawn on the same bank, as required by the Uniform Commercial Code. He claimed the full amount of his loss.

Chase responded to the complaint by claiming that the dispute was subject to an arbitration agreement and that the court should stay all court proceedings and order the case to arbitration. The trial court conducted a hearing based on competing affidavits alone regarding Chase's usual business practice in opening accounts, the fact that Chase had no supporting paperwork to show that Taylor had seen and signed a signature card referring to a booklet that invoked the Federal Arbitration Act, and that Taylor denied ever seeing such a card or receiving the booklet. Nonetheless, based on this, the court con-

1. While this opinion uses "Chase" or "Chase Bank" to identify the bank, the full name is JPMorgan Chase Bank, N.A. At the time the account was opened, the bank was Bank One, N.A., which has now merged into Chase.

cluded that Taylor had signed the signature card and that there was an arbitration agreement, and referred the case to arbitration.

Taylor then moved the court to vacate the order to arbitrate, or to make its order final and appealable. The court denied that motion.

Taylor's complaint had also alleged another claim, unrelated to this one, which remained before the court. For the next few years, both sides pursued that other claim and did not proceed to arbitration on this claim. The other claim was eventually settled and dismissed, and then Chase moved the court to dismiss this remaining claim because Taylor had not begun arbitration proceedings within the statute of limitations in KRS 355.4–111. Before the court heard this motion, Taylor initiated the arbitration proceeding in the National Arbitration Forum (NAF) as specified in the alleged arbitration agreement. Chase responded, an arbitrator was selected, and the next year, Chase moved the arbitrator to dismiss the claim because of Taylor's delay in filing the arbitration claim. The arbitrator granted the motion, and dismissed the claim in an order of such brevity that it does not even reference the specific law upon which the dismissal was based, stating only the "applicable substantive law supports the issuance of the Order."

Shortly thereafter, this Court decided *Ally Cat, LLC v. Chauvin*, 274 S.W.3d 451, 456 (Ky.2009), wherein we held that in

order to be bound by an arbitration agreement, "[a]ssent to be bound by the terms of the agreement must be expressed, and simply acknowledging the receipt of the document does not constitute assent to be bound." Relying on this decision, Taylor moved the trial court to take the case out of abeyance and place it back on the active docket, and to set aside its previous order compelling arbitration. He argued that there never was an agreement to arbitrate under *Ally Cat*, and that the trial court's previous decision therefore was in error. Around the same time, Chase filed a motion to confirm the arbitrator's award, arguing that no motion to vacate the arbitrator's award had been timely filed.

Reasoning that its previous order was in error and that the case was not final, the trial court set aside its earlier order finding that an arbitration agreement existed, and its referral of the case to arbitration. A week later, the court denied Chase's motion to confirm the arbitration award.

■ Citing KRS 417.220, Chase then took an immediate interlocutory appeal of the order denying its motion to confirm the arbitration order. An appeal is allowed under KRS 417.220 when a motion to compel arbitration under an arbitration agreement is denied and the arbitration agreement falls under the Kentucky Arbitration Act.[2] *See Kindred Hospitals Ltd. Partnership v. Lutrell*, 190 S.W.3d 916, 919 (Ky.2006). Chase argued on appeal that the trial court was bound to confirm the arbitrator's decision under 9 U.S.C.

---

2. To fall under the Kentucky Uniform Arbitration Act, the arbitration agreement must specify that the arbitration is to occur in Kentucky; otherwise, the Kentucky courts have no jurisdiction to enforce the agreement under that Act, *see Ally Cat, LLC v. Chauvin*, 274 S.W.3d 451, 455 (Ky.2009), though they may have jurisdiction to enforce the agreement under the Federal Arbitration Act. The purported agreement in this case states that it

falls under the Federal Arbitration Act but it also states that the arbitration was to occur "at a location within the federal judicial district that includes your mailing address at the time the claim is filed." That appears to be sufficient to bring the agreement under the Kentucky act. Nevertheless, as discussed below, there is some question in this case as to which of the two acts applies to this case.

§ 9 or KRS 417.150, and could do nothing else, including setting aside the earlier order compelling arbitration. The Court of Appeals disagreed and affirmed the trial court. In reaching this conclusion, the court held that the arbitrator's decision was not an "award" as contemplated by KRS 417.150 and that a trial court has the power to vacate its orders prior to a final judgment.

We accepted discretionary review because of evolving law related to arbitration cases on both the state and national level.

## II. Analysis

■ The question in this case is whether the trial court had the authority to set aside its earlier order compelling arbitration, thus voiding the arbitration, or instead was compelled to confirm the arbitration order. Chase, of course, claims that the trial court had no choice but to confirm the arbitration order under both federal and state law because Taylor did not move to vacate the award. Like the Court of Appeals, albeit for somewhat different reasons, this Court disagrees.

Chase claims this question is controlled by federal and state statutes requiring that a court "shall" confirm an arbitration award unless the award has been vacated, modified, or corrected. *See* 9 U.S.C. § 9; KRS 417.150. Once an award has been rendered and has not been vacated, modified or corrected, so goes the argument, the trial court can only confirm the award and there is no further review of the issues in the case, including whether there was a valid arbitration agreement in the first place. This argument assumes, incorrectly, that a finding of the existence of an arbitration agreement is final upon issuance of an arbitration award, when in fact the existence of the agreement is a separate and predicate question.

There is some question in this case whether the purported arbitration agreement was controlled by the Federal Arbitration Act or the Kentucky Uniform Arbitration Act.[3] This Court does not have to decide that question, as the two acts function almost identically in this context. Of course, if the arbitration agreement is controlled by the Federal Arbitration Act, then it is clear that under the federal Supremacy Clause that federal law is controlling for the federal questions in the case, that is, how the arbitration is to work and whether the case must be referred to arbitration. The alleged arbitration agreement in this case references the Federal Arbitration Act and the National Arbitration Forum, which proceeds under the

---

**3.** This question arises because the notice of appeal in this case claims the appeal, which was admittedly interlocutory, was allowed under KRS 417.220, but the alleged arbitration agreement states it falls under the Federal Arbitration Act. KRS 417.200 is part of the Kentucky Uniform Arbitration Act, and interlocutory appeals from certain decisions under the act are allowed by that statute. *See Kindred Hospitals Ltd. Partnership v. Lutrell,* 190 S.W.3d 916, 919 (Ky.2006). Chase, however, notes that when an arbitration agreement states it is subject to the federal act, that act governs the agreement. *See Hathaway v. Eckerle,* 336 S.W.3d 83, 87 (Ky.2011).

But if the agreement is governed by the federal act, then Chase should have sought interlocutory relief for decisions denying arbitration under agreements subject to the Federal Arbitration Act under CR 65.07 and 65.09, the rules governing interlocutory appeals of decisions granting or denying injunctive relief, not an appeal under KRS 417.220. *See North Fork Collieries, LLC v. Hall,* 322 S.W.3d 98, 102 (Ky.2010) ("In the arbitration context, we have recognized CR 65.07 and CR 65.09 as appropriate avenues for the review of trial court orders denying motions to compel arbitration, particularly when, as here, the KRS 417.220 right to an interlocutory appeal does not apply."). However, though not properly framed, the review is essentially the same.

Federal Arbitration Act. If there was an arbitration agreement in this case, then the arbitrator's award, if it was such,[4] would control the outcome of this case. It is this emphasis on what a court "shall" do with an award that led the Court of Appeals to focus on whether the arbitrator's order in this case was an award under the various arbitration statutes.

But the question whether the order was an "award," is a red herring in this case, as the applicability of these statutes depends on the existence of a valid arbitration agreement. And even the federal authorities agree that *whether* there is a valid arbitration agreement is a matter of state contract law, so long as the state law in question does not single out arbitration agreements. *See* 9 U.S.C.A. § 2 ("A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."); *AT&T Mobility LLC v. Concepcion,* —— U.S. ——, 131 S.Ct. 1740, 1746, 179 L.Ed.2d 742 (2011) ("This saving clause [9 U.S.C. § 2] permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the

fact that an agreement to arbitrate is at issue."); *Allied–Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) ("States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of *any* contract.'" (quoting 9 U.S.C. § 2)).

■ Before a court can order a case to arbitration, it must first find that there is a valid, binding arbitration agreement. If a state court finds the existence of an arbitration agreement, and the arbitrator enters an "award," then the court is limited to confirming the award, 9 U.S.C § 9; KRS 417.150; vacating the award, 9 U.S.C § 10; KRS 417.060; or modifying or correcting it, 9 U.S.C § 11; KRS 417.170. But if there is no valid arbitration agreement, then the court retains its full jurisdiction to proceed as in any other case, and the arbitration acts have no applicability.

■ Procedurally, under state law regarding arbitration, if a court finds that as a matter of state contract law there is no arbitration agreement and denies the application to compel arbitration, the moving party may file an immediate appeal under KRS 417.220(*l* )(a), if the agreement is subject to the Kentucky Uniform Arbitration Act, or under Civil Rule 65.09, if the agreement is subject to the Federal Arbitration

4. Though this Court does not decide the issue, given its resolution of the case, the order likely was an "award" as contemplated by the federal and state arbitration acts. Though written in the most generic terms possible, the order stated it was based on "substantive law," making it a decision on the merits, not procedural grounds. (The Court of Appeals' erroneous conclusion that the decision was solely procedural in nature was based on a misreading of the description of the motion Chase made to the arbitrator, which stated it was brought under Rule 18 of the National

Arbitration Forum's rules of procedure. But Rule 18 is simply the procedural rule dictating the content of any request for an order from the arbitrator. The order was not based on Rule 18 as the substantive grounds for the order; rather, the motion was brought under that rule in the same way that a motion is brought under Civil Rule 7.02 in our courts.) And "award" means "[a] final judgment or decision, esp. one by an arbitrator or by a jury assessing damages.—Also termed *arbitrament.*" *Black's Law Dictionary* (9th ed.2009).

Act, *see North Fork Collieries, LLC v. Hall,* 322 S.W.3d 98, 102 (Ky.2010). There is no like provision in the statutes to allow a party against whom arbitration is wrongfully ordered to take an immediate appeal,[5] nor have we read the Civil Rules to allow one. Instead, any appeal of the trial court's contract decision must come in a direct appeal of the ruling after the case is final.

█ Chase's argument suggests that if the case gets to the point where there is an arbitration award, then there can be no further examination by the trial court or appellate review of whether there was a valid arbitration agreement. But that argument cannot be correct, as it would mean the trial court's finding that there is a valid agreement is unreviewable. But, unquestionably, every adversely affected litigant is constitutionally entitled to one appeal of right in the courts of this Commonwealth. *See* Ky. Const. § 115 ("In *all cases,* civil and criminal, there shall be allowed as a matter of right at least one appeal to another court...." (emphasis added)). If there is no provision for that appeal to be interlocutory, then it must come after a final decision of the trial court, unless waived. There is no question of waiver here. *See Dreamers, LLC v. Don's Lumber and Hardware, Inc.,* 366 S.W.3d 381 (Ky.2011).

█ Thus, had Taylor not moved the court anew to consider its contract ruling on the arbitration agreement before finality of the case, he could have raised this state law contract question on direct appeal, even if he did not have a direct appellate challenge to the arbitration award. There is no conflict of law here,

because these are separate legal matters. *If* there is a valid arbitration agreement, then Taylor is bound by the arbitrator's award. But *whether* there is an arbitration agreement is a separate and distinct legal question—a question of state law— that cannot evade appellate review. Even in the face of an arbitrator's award, Taylor would still be entitled to appellate review of the trial court's decision that there was an arbitration agreement in the first instance. This predicate question must be answered before the law regarding arbitration applies. *See MHC Kenworth– Knoxville/Nashville v. M & H Trucking, LLC,* 392 S.W.3d 903, 905 (Ky.2013) ("Before examining the merits of an arbitration agreement, a court must first determine the validity of that agreement as a threshold matter.").

Initially the trial court answered that an agreement existed. Had the court not set that order aside, and unless that decision was found to be wrong on appeal, Taylor would be bound by the arbitrator's award. But if that decision finding the existence of a valid agreement was wrong, and Taylor established that on appeal, then the arbitration award is void. Taylor has the right to have that question considered on appeal.

That is not the procedural posture of this case, however. Before final judgment in the case, Taylor asked the trial court to set aside its prior ruling on the ground that the finding that there was an arbitration agreement was erroneous. He did not move the court to vacate or modify the award, and thus the timing provisions of 9 U.S.C. §§ 9–11 and KRS 417.050–.070 do not apply. The case was not at that point final. To reach finality, the trial court

---

5. This is not a case where arbitration had begun or was threatened and a party moved to stay the arbitration, as is allowed under KRS 417.060(2). An appeal is allowed from an order granting such a stay. KRS 417.220(*l*)(b). Though we have not so stated, presumably similar relief would be available under Civil Rule 67.09 for a similar decision concerning an agreement subject to the federal act.

would have to confirm, modify or correct the arbitration award and enter a judgment in conformity therewith. *See* 9 U.S.C. § 13; KRS 417.180. The trial court did not do this.

█ In fact, the state law question of whether there was an arbitration agreement was once again raised to the court. There is nothing in the law that prevents a litigant from renewing a motion to the trial court before finality of the case. Until a final judgment is entered, all rulings by a court are interlocutory, and subject to revision. *See* CR 54.02(1) ("[A]ny order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is interlocutory and subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."); CR 52.02 ("Not later than 10 days after entry of judgment the court of its own initiative, or on the motion of a party made not later than 10 days after entry of judgment, may amend its findings or make additional findings and may amend the judgment accordingly."); *see also Coleman v. Sopher*, 201 W.Va. 588, 499 S.E.2d 592, 609 (1997) ("[a trial] court has plenary power to reconsider, revise, alter, or amend an interlocutory order") (quoting 12 James Wm. Moore et al., *Moore's Federal Practice* § 59.43[1] (3d ed.1997) (alteration in original)); *Eberle v. Eberle*, 2009 ND 107, 766 N.W.2d 477, 483 (N.D.2009) ("Interlocutory orders . . . may be revised or reconsidered any time before the final order or judgment is entered.").

█ Indeed, efficient judicial process mandates that a trial court correct an erroneous ruling before finality when possible. There is an expectation that trial courts will apply the correct law to matters before it. Certainly, if a court believes before finality that it has made an error in the law, it is incumbent upon the court to correct the matter. *Cf. Potter v. Eli Lilly & Co.*, 926 S.W.2d 449, 453 (Ky.1996) ("[T]he trial court has a duty and a right to determine that its judgments are correct and accurately reflect the truth."), *abrogated on other grounds by Hoskins v. Maricle*, 150 S.W.3d 1 (Ky.2004). To fail to do so strikes at the heart of what it means to get a fair trial in a court of law. After finality, the question becomes a matter for the appellate courts, which may be avoided by correct trial court action.

Here, the trial court took another look at the evidence that had been presented to prove the existence of an arbitration agreement through the lens of contract formation presented in *Ally Cat.* By way of affidavit, Chase asserted that it was its practice at the time Taylor opened his savings account to obtain account signature cards and give a booklet to new customers that stated disputes would be settled by arbitration under the Federal Arbitration Act. However, Chase also candidly admitted that it had no documentation showing that Taylor had signed an account card or been given the booklet, and could instead rely only on its claimed habit. Taylor testified that he had not been given the booklet, and had never seen it. He did admit to signing something, but the bank could not produce that document. In fact, the document used to support the bank's theory was paperwork signed by *some other person*, and Taylor denied that it was the same form of card he had signed. The judge was asked to assume that because the bank said it was its practice to get signature cards and give out the booklet, and that it had done so to at least one other person, it had done so

with Taylor. The teller who had set up Taylor's account was not available, so the bank had no one who could corroborate that Taylor got the paperwork.

Apparently, the trial court initially assumed the bank could not have possibly been negligent enough not to have given Taylor the documents, but this seems unfounded since the bank was negligent enough to have lost the documents it claims showed Taylor's signature and receipt of the booklet.

■ As *Ally Cat* pointed out, assent to the terms of an agreement to arbitrate must be expressed, and even if Taylor had acknowledged receipt of the booklet, that alone would not establish assent to be bound by material contained in the booklet alone. But he denied even getting the booklet, which makes the possibility of any kind of assent even more remote. As KRS 417.050 establishes, an arbitration agreement is valid, enforceable and irrevocable, *save upon such grounds as exist at law for the revocation of any contract.* Here, there was ample evidence from which the trial court could conclude that Taylor had not signed the signature card indicating his agreement or had not received the Account Rules and Regulations containing the arbitration agreement.

■ As this Court has noted, "there is no question 'that the party seeking to enforce an agreement has the burden of establishing its existence.'" *MHC Kenworth–Knoxville/Nashville v. M & H Trucking, LLC,* 392 S.W.3d 903, 906 (Ky. 2013) (quoting *Louisville Peterbilt, Inc. v. Cox,* 132 S.W.3d 850, 857 (Ky.2004)). The party seeking to enforce the agreement has at the very least the burden of providing "prima facie evidence of the agreement." *Id.* While a signed copy of the purported agreement is not an absolute prerequisite to showing the existence of an arbitration agreement, the prima facie burden is usually "met ... by providing copies of written and signed agreements to arbitrate." *Louisville Peterbilt, Inc.,* 132 S.W.3d at 857. And there is no question that agreements to arbitrate, to be binding under the federal and state arbitration acts, must be in writing. *See* 9 U.S.C. § 2; KRS 417.050.

■ Chase objects that the trial court never set aside its finding that a written arbitration agreement existed, and thus continues to be bound by that finding. But this claim is obviously refuted by the fact that the trial court set aside—and thereby nullified—the order containing that finding. While Chase could have complained to the trial court that it had not expressly found that there was no arbitration agreement, it failed to do so, and cannot now complain about the lack of such a finding. *See* CR 53.04.

■ By setting aside its earlier order, the trial court made any findings therein void ab initio, or conversely at least made an implicit finding that no arbitration agreement had ever been entered into—a failure of formation. This is further supported by the fact that the trial court then ordered the case to proceed on the docket. This Court cannot say that the trial court was clearly erroneous in light of the available proof. *See* CR 52.01. The trial court is charged with weighing the evidence and evaluating credibility, *id.,* at any time it reviews the evidence. And at that point in the proceedings, the trial court was the *only* entity that could apply the correct law and determine the facts, as an appeal would have been premature. Consequently, by finding that its previous order was in error and setting it aside, the trial court removed the predicate finding that would allow the case to have gone to arbitration in the first place.

The net result is the same even if the trial court had denied the motion to abate and made the case final, allowing Taylor to raise this matter on appeal. In either case, the matter would have proceeded to arbitration unless the trial court reversed itself before the arbitration occurred. While there is some inconvenience to the parties because of undergoing the arbitration process, Chase cannot expect to benefit from a misapplication of the law or incorrect facts, and Taylor's delay in renewing his objection to the court's ruling until the arbitration was completed merely resulted in undue cost to himself. Because the record supports the trial court's finding that there was not an arbitration agreement between the parties, its order cannot be reversed.

### III. Conclusion

Because we hold that the trial court did not err in finding that there was no arbitration agreement, and that the trial court had the power to correct its prior ruling, albeit late in the case, there was effectively no pertinent arbitration to review. Thus we do not reach any other issues on appeal about the arbitration process, such as whether a dismissal for timeliness is an "award" for purposes of confirmation or vacation of an award. For the forgoing reasons, the Court of Appeals' decision affirming the trial court is affirmed.

MINTON, C.J.; CUNNINGHAM, KELLER, and VENTERS, JJ., concur. ABRAMSON, J., concurs in result only without separate opinion. SCOTT, J., not sitting.