RENDERED:  MAY 7, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1675-MR

KENNETH ALVIN O'NEIL AND                                    APPELLANTS
KENTUCKY PLANNING PARTNERS


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.               HONORABLE ANN BAILEY SMITH, JUDGE
                    ACTION NO. 19-CI-000214


DALE RAE HUTCHENS,                                          APPELLEES
PERSONALLY AND AS GUARDIAN
FOR ADAM HAHN HUTCHENS;
AND JOHN HANCOCK LIFE
INSURANCE COMPANY (U.S.A.)


AND

                            NO. 2019-CA-1683-MR

JOHN HANCOCK LIFE INSURANCE                                 APPELLANT
COMPANY (U.S.A.)


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.               HONORABLE ANN BAILEY SMITH, JUDGE
                    ACTION NO. 19-CI-000214

DALE RAE HUTCHENS,                                                    APPELLEES
PERSONALLY AND AS GUARDIAN
FOR ADAM HAHN HUTCHENS


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; ACREE AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Kenneth Alvin O'Neil and Kentucky Planning Partners
(Planning Partners) bring Appeal No. 2019-CA-1675-MR and John Hancock Life
Insurance Company (John Hancock) brings Appeal No. 2019-CA-1683-MR from
an Opinion and Order of the Jefferson Circuit Court denying O'Neil's, Planning
Partners', and John Hancock's motions to dismiss and compel arbitration.  We
affirm Appeal Nos. 2019-CA-1675-MR and 2019-CA-1683-MR.

BACKGROUND

On October 18, 2017, James Hutchens applied for term life insurance
in the amount of two million dollars and temporary life insurance in the amount of
one million dollars with John Hancock.  James executed several documents related
to his application for life insurance with John Hancock, including a document
entitled Account Holder Acknowledgement.  The Account Holder
Acknowledgment was signed by James and by O'Neil, who served as John
Hancock's agent throughout the application process.  Importantly herein, the

-2-

Account Holder Acknowledgement included an arbitration provision. James also tendered two months of premium payments at the time.

On November 28, 2017, James suddenly passed away from a cardio-vascular event. James had designated Dale Rae Hutchens and Adam Hahn Hutchens (collectively referred to as the Hutchens) as beneficiaries of the life insurance with John Hancock. Upon James' death, the Hutchens filed a claim with John Hancock for the proceeds of the two-million-dollar term life insurance policy. John Hancock, however, only paid one million dollars to the Hutchens under the temporary life insurance issued to James. John Hancock maintained that it had neither approved the application for nor issued the term life insurance policy of two million dollars to James. Rather, at the time of James' death, John Hancock asserted that James was only covered by the temporary life insurance in the amount of one million dollars.

As a result, the Hutchens filed a complaint in the Jefferson Circuit Court against John Hancock, O'Neil, and Kentucky Planning Partners.[1] In the Complaint, the Hutchens alleged breach of contract, common law bad faith, unjust enrichment, negligence and violation of Kentucky Revised Statutes (KRS) 304.12-230, KRS 304.12-235, and KRS 304.12-010. In particular, the Hutchens claimed:

---

[1] Kentucky Planning Partners, LLC, is an insurance agency, and one of its two members is Kenneth Alvin O'Neil.

## Claims for Relief

### A. John Hancock.

#### i. Breach of Contract.

35. Mr. Hutchens and John Hancock had an enforceable agreement for the payment of $2 million in life insurance benefits to Plaintiffs as his Beneficiaries.

36. Plaintiffs were the named, intended, and contractual third-party beneficiaries of the $2 million life insurance coverage.

37. John Hancock breached its contractual obligations. By way of example, and without limitation, John Hancock:

    a. failed to timely issue payment of the life insurance coverage.

    b. failed to issue full-payment of the life insurance coverage.

    c. failed to pay the Acc. Benefit.

    d. failed to comply with applicable Kentucky insurance laws and regulations incorporated as contractual terms.

38. As a direct and proximate result, Plaintiffs have been damaged by John Hancock's breach, thereby entitling them to seek and to receive all available and appropriate relief.

    . . . .

#### ii. Violation of KRS 304.12-230 ("UCSPA").

40.  John Hancock is subject to Kentucky's insurance laws and regulations, including KRS 304.12-230 – Kentucky's Unfair Claims Settlement Practices Act ("UCSPA").

41.  With respect to Mr. Hutchens' Application and to Plaintiffs' claim for insurance benefits, John Hancock failed to comply with the UCSPA.  John Hancock's violation has continued unabated.  By way of example and without limitation, John Hancock:

> a.  misrepresented that the life insurance coverage had not been approved and issued.
>
> b.  misrepresented that only half of the life insurance coverage was payable.
>
> c.  misrepresented by omission the Acc. Benefits due and payable.
>
> d.  failed to acknowledge and act with reasonable promptness with respect to the Plaintiffs' claims.
>
> e.  failed to conduct a reasonable investigation of Plaintiffs' claims, including not investigating the Acc. Benefit.
>
> f.   failed to attempt in good faith to resolve Plaintiffs' claims where liability was reasonably clear – instead, refusing to release documents.
>
> g.  compelled Plaintiffs to file a lawsuit in order to recover the unpaid life insurance coverage and the Acc. Benefit coverage, including referring Plaintiffs' claims to its in-house legal department and then to outside legal counsel.

42. John Hancock's actions were and continue to be without a reasonable basis and are indicative of a reckless disregard for Plaintiffs rights as Beneficiaries.

43. As a direct and proximate result, Plaintiffs have been damaged by John Hancock's violations of KRS 304.12-230, thereby entitling them to seek and to receive all appropriate relief.

. . . .

### iii. Common Law Bad Faith.

45. As a party to the Application, including the life insurance coverage and Acc. Benefit, John Hancock owed a common law duty of good faith to Plaintiffs as the Beneficiaries.

46. John Hancock breached its duty of good faith. John Hancock's breach has continued unabated. By way of example and without limitation, John Hancock:

a. misrepresented that the life insurance coverage had not been approved and issued.

b. misrepresented that only half of the life insurance coverage was payable.

c. misrepresented by omission the Acc. Benefits due and payable.

d. failed to acknowledge and act with reasonable promptness with respect to the Plaintiffs' claims.

e. failed to conduct a reasonable investigation of Plaintiffs' claims, including not investigating the Acc. Benefit.

f. failed to attempt in good faith to resolve Plaintiffs' claims where liability was reasonably clear – instead, refusing to release documents.

g. compelled Plaintiffs to file a lawsuit in order to recover the unpaid life insurance coverage and the Acc. Benefit coverage, including referring Plaintiffs' claims to its in-house legal department and then to outside legal counsel.

47. John Hancock did not have a reasonable, legitimate, or arguable reason for its actions. John Hancock had actual knowledge that it lacked a legitimate or arguable reason for its actions.

48. John Hancock's actions were willful and with reckless disregard to Plaintiffs' rights as Beneficiaries and under applicable Kentucky insurance laws and regulations.

. . . .

**iv. Violation of KRS 304.12-235.**

51. Pursuant to KRS 304.12-235(1), John Hancock was obligated to remit the insurance proceeds within 30-days of notice and proof of Plaintiffs' claim.

52. Pursuant to KRS 304.12-235(2), for any claims paid after the 30-day deadline, the statute requires John Hancock to remit interest calculated at 12% per annum.

53. Pursuant to KRS 304.12-235(3), John Hancock is further obligated to reimburse Plaintiffs for their attorneys' fees incurred in collecting the unpaid interest and insurance proceeds.

54.  John Hancock was on notice and in receipt of proof of Plaintiffs' claim, for the life insurance coverage and Acc. Benefit, no later than November 2017 – making the proceeds due and payable within 30 days thereafter.

55.  John Hancock did not comply with the statutory requirement to timely remit the insurance proceeds.  By way of example, and without limitation, John Hancock:

a.  delayed payment of ½ the insurance proceeds – $1 million – until the following June 2018 but failed to remit the statutory 12% interest.

b.  failed to remit the balance of the insurance proceeds – $1 million, with the corresponding statutory 12% continuing to accrue.

c.  caused Plaintiffs to incur attorneys' fees and expenses to recover the unpaid insurance proceeds and the unpaid interest.

. . . .

**v. Unjust Enrichment.**

57.  Mr. Hutchens conferred a benefit on John Hancock when he remitted premiums, and that John Hancock accepted, for the $2 million in life insurance coverage.

58.  Upon Mr. Hutchens' death, John Hancock failed to remit the full $2 million, remitting only half of the coverage while retaining the full premium paid by Mr. Hutchens.

59.  The $1 million in unpaid coverage is a benefit that was conferred on John Hancock at Mr.

Hutchens', and by extension the Plaintiffs as his named Beneficiaries, expense.

60. John Hancock's retention of the $1 million in promised life insurance coverage is inequitable as it deprives the Plaintiffs of the benefit conferred by John Hancock's acceptance and retention of the insurance premiums.

. . . .

### vi. Negligence.

62. As the insurance company involved in Mr. Hutchens' application for insurance coverage, John Hancock owed Mr. Hutchens a duty to ensure its agents: (i) complied with Kentucky's insurance laws and regulations; and (ii) did not make any misrepresentations.

63. John Hancock breached its duties. The breach continues unabated. By way of example, without limitations, John Hancock:

> a. failed to ensure its agents – specifically KPP – were licensed and appointed in Kentucky to act on its behalf.

> b. allowed its agents to represent to Mr. Hutchens that the $2 million in life insurance had been approved and issued.

64. As a direct and proximate result, Plaintiffs have been damaged by John Hancock's negligence, thereby entitling them to seek and to receive all appropriate relief.

. . . .

### vii.  Punitive.

66.  John Hancock's actions were committed with the requisite mind set so as to entitle Plaintiffs to an award of punitive damages under Kentucky statutory and common law.

### B.  O'Neil and KPP.

### i. Negligence.

67.  O'Neil and [Kentucky Planning Partners (KPP)] owed Mr. Hutchens a statutory and common law duty in the solicitation and sale of the $2 million life insurance coverage with John Hancock.

68.  O'Neil and KPP breached their respective duty to Mr. Hutchens, and by extension the Plaintiffs as his named Beneficiaries. The breach has continued unabated. By way of example, and without limitation, O'Neil and KPP:

> a.  failed to timely deliver the life insurance policy to Mr. Hutchens.
>
> b.  failed to timely process the Application and corresponding forms.
>
> c.  failed to accurately advise Mr. Hutchens concerning the status of the Application.

69.  As a direct and proximate result, Plaintiffs have been damaged by O'Neil's and KPP's negligence, thereby entitling them to seek and to receive all appropriate relief.

> . . . .

### ii.  Misrepresentation.

-10-

71. O'Neil and KPP made material representations to Mr. Hutchens concerning the status of his Application that, based on John Hancock's subsequent refusal to pay the Plaintiffs' claims, were false.

72. O'Neil and KPP recklessly informed Mr. Hutchens the insurance coverage had been approved and issued as applied.

73. O'Neil's and KPP's representations were made with the intent of obtaining Mr. Hutchens' reliance.

74. Mr. Hutchens relied on O'Neil's and KPP's representations, and as a result was damaged by John Hancock's subsequent refusal to pay Plaintiffs the entire $2 million in life insurance coverage.

. . . .

**C.    John Hancock, O'Neil and KPP.**

**i.  Violation of KRS 304.12-010.**

77. Kentucky's insurance code prohibits unfair and deceptive insurance practices based on the following statutory language.

> No person shall engage in this state in any practice which is prohibited in this subtitle, or which is defined therein as, or determined pursuant thereto to be, an unfair method of competition or any unfair or deceptive act or practice in the business of insurance.

KRS 304.12-010.

78. John Hancock's, O'Neil's, and KPP's ("Defendants") individual and collective actions in the solicitation and issuance of the life insurance coverage

-11-

were unfair and deceptive. By way of example, Defendants:

>a. misrepresented that the Application would be processed timely and with an intended effective date of October 12, 2017.

>b. misrepresented that the insurance coverage had been approved and issued as applied.

>79. As a direct and proximate result, Plaintiffs have been damaged by Defendants' individual and collective actions, thereby entitling them to seek and to receive all appropriate relief.

Complaint at 6-14.

John Hancock, O'Neil, and Planning Partners filed answers and motions to dismiss and compel arbitration. In the motions, it was argued that the Hutchens' claims were subject to arbitration under the arbitration provision contained in the Account Holder Acknowledgement executed by James. In their response, the Hutchens maintain that KRS 417.050(2) prohibited such a mandatory arbitration provision as to insurance contracts. The Hutchens pointed out that this statutory prohibition (KRS 417.050(2)) against arbitration was not preempted by the Federal Arbitration Act (FAA) by operation of the McCarran-Ferguson Act.

In an October 8, 2019, opinion and order, the circuit court denied the motions to dismiss and compel arbitration. The circuit court reasoned:

-12-

This is an action on an application for an insurance policy on the life of James Hutchens which [Hutchens] claims ripened into an insurance contract that the Defendant John Hancock breached by failing to pay the face amount plus an accelerated benefit rider after Mr. Hutchens died. All defendants have filed motions to dismiss pursuant to CR [Kentucky Rules of Civil Procedure] 12.02(f), claiming that an arbitration agreement James Hutchens signed at the time of application requires that the dispute by submitted to binding arbitration pursuant to The Federal Arbitration Act ("FAA"), 9 [United States Code (U.S.C.)] § 1 *et seq.* The parties have filed briefs, the Court has carefully considered the facts and law contained therein and resolved the instant motion by applying Kentucky's well-known standard for motions to dismiss. Being sufficiently advised, the Court **DENIES** the defendants' motion to compel arbitration, finding, first, that construing the allegations in the complaint in a light most favorable to the plaintiff, the alleged arbitration agreement is unenforceable pursuant to KRS 417.050(2) because the agreement pertains to an insurance contract. Second, the Court finds that a factual issue exists concerning whether the form upon which the purported agreement is contained was ever filed with and approved by the insurance commissioner. If the commissioner did not approve the form, the agreement is void.

October 8, 2019, opinion and order at 1-2 (citations and footnotes omitted). These interlocutory appeals follow.[2]

---

[2] An interlocutory appeal is permitted from an order denying a motion to compel arbitration. Kentucky Revised Statutes (KRS) 417.220(1)(a); *JP Morgan Chase Bank, N.A. v. Bluegrass Powerboats*, 424 S.W.3d 902, 908 (Ky. 2014).

## ISSUES PRESENTED

In both appeals (Appeal Nos. 2019-CA-1683-MR and 2019-CA-1675-MR), John Hancock, O'Neil and Planning Partners (collectively referred to as appellants) contend that the circuit court erred by determining that arbitration was barred by operation of KRS 417.050(2). In particular, appellants argue that the arbitration provision in the Account Holder Acknowledgement is enforceable under the FAA and not barred by KRS 417.050(2). In support thereof, appellants maintain that KRS 417.050(2) only bars an arbitration provision in an insurance contract and that no insurance contract existed between John Hancock and James. John Hancock points out that it had not issued the term life insurance of two million dollars at the time of James' death. In fact, John Hancock states that it was still in the process of reviewing James' application for the term life insurance when James died. Thus, according to appellants, no insurance contract or policy existed, thus rendering KRS 417.050(2) inapplicable. Alternatively, appellants argue that the arbitration provision is governed by the FAA, and the FAA preempts state law to the contrary, including KRS 417.050(2).[3]

## STANDARD OF REVIEW

It is well-established that a person seeking to compel arbitration must demonstrate that a valid arbitration agreement exists between the parties. *Ping v.*

_____

[3] The Federal Arbitration Act is codified in 9 U.S.C. § 1, *et seq*.

*Beverly Enters., Inc.*, 376 S.W.3d 581, 590 (Ky. 2012); *Golden Gate Nat'l Senior Care, LLC. v. Rucker*, 588 S.W.3d 868, 871 (Ky. App. 2019). The existence of an agreement looks to state law rules for contract formation. *Ping*, 376 S.W.3d at 590. And, as an appellate court, the review of a trial court's interpretation and construction of a contract is a matter of law, and we thus apply a *de novo* standard of review. *Lynch v. Claims Mgmt. Corp.*, 306 S.W.3d 93, 96 (Ky. App. 2010). Finally, we review the circuit court's findings of fact, if any, under the clearly erroneous standard. *N. Fork Collieries, LLC v. Hall*, 322 S.W.3d 98, 102 (Ky. 2010); CR 52.01.

## ANALYSIS

In this case, the arbitration provision found in the Account Holder Acknowledgement provides:

> ARBITRATION AGREEMENT: With respect to any disputes that might arise out of this transaction, LPL Insurance Associates, Inc. and its affiliates, its appointed insurance agents, and the individual whose signature appears below are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of arbitration forum in which a claim is filed; such rules being incorporated herein by reference.

Account Holder Acknowledgement at 1. To determine whether the above arbitration provision is valid and enforceable, we must initially determine whether

-15-

KRS 417.050(2) is applicable, and if so, whether the FAA preempts its application herein. Our analysis shall proceed accordingly.

KRS 417.050 reads, in relevant part:

A written agreement to submit any existing controversy to arbitration or a provision in written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law for the revocation of any contract. This chapter does not apply to:

. . . .

(2) Insurance contracts. Nothing in this subsection shall be deemed to invalidate or render unenforceable contractual arbitration provisions between two (2) or more insurers, including reinsurers[.]

Under KRS 417.050(2), an arbitration agreement or arbitration provision in an **insurance contract** is invalid and unenforceable unless such arbitration provision is between insurers. *Scott v. Louisville Bedding Co.*, 404 S.W.3d 870, 877-78 (Ky. App. 2013). And, the term "insurance" is defined as a "contract whereby one undertakes to pay or indemnify another as to loss certain specified contingencies or perils called 'risks,' or to pay or grant a specified amount or determinable benefit or annuity in connection with ascertainable risk contingencies, or to act as surety." KRS 304.1-030. Herein, we are concerned with the term "insurance contracts" as used in KRS 417.050(2) and whether an application for insurance comes within its ambit.

-16-

Appellants advance a narrow interpretation of the term "insurance contracts" and believe it encompasses only issued insurance policies. Hence, appellants argue that KRS 417.050(2) does not apply to an application for insurance. We reject such overly narrow and technical interpretation.

When interpreting a statute, the Court is primarily guided by legislative intent or purpose of such statute. *See Livingood v. Transfreight, LLC*, 467 S.W.3d 249, 256 (Ky. 2015). A legislative purpose of KRS 417.050(2) has been recognized as regulating the business of insurance. *Scott*, 404 S.W.3d at 880. This legislative purpose would be undoubtedly frustrated by appellants' proposed narrow interpretation of KRS 417.050(2), as an insurance company would be free to impose strict arbitration as to any issue related to the insurance application. Also, we think an application for insurance can be viewed as being akin to an offer under contract law; thus, such an application is inextricably interwoven with every insurance contract. For these reasons, applications for insurance certainly come within the purview of the term "insurance contracts" as utilized in KRS 417.050(2). Accordingly, we interpret KRS 417.050(2) as being equally applicable to insurance applications as it is to issued insurance policies or insurance contracts.

In this case, the arbitration provision was contained in the Account Holder Acknowledgement. The Account Holder Acknowledgement was executed

-17-

with other insurance application forms and specifically stated that it applied to

"any disputes that might arise out of this transaction." As the arbitration provision

was contained in an insurance application form, we are of the opinion that the

arbitration provision comes within the scope of KRS 417.050(2) and is rendered

unenforceable thereby. And, although the term life insurance policy may not have

been issued to James at the time of his death, it is uncontroverted that James was

covered by temporary life insurance issued by John Hancock and in full force at

the time of James' death.

As to the purported preemption of KRS 417.050(2) by the FAA, our

Court has specifically held that the McCarran-Ferguson Act precludes the FAA

from preempting KRS 417.050(2).[4] *Scott*, 404 S.W.3d at 877-80. Thus, the FAA

does not preempt KRS 417.050(2).

Our decision that KRS 417.050(2) renders the arbitration provision

contained in the Account Holder Acknowledgement unenforceable is one of law

and based upon undisputed facts. Consequently, any alleged error committed by

the circuit court upon reviewing this matter under CR 12.02(f) is merely harmless.

We view any remaining contentions of error to be without error or

moot.

---

[4] 15 U.S.C. § 1012(a) and (b).

To summarize, we conclude that the arbitration provision found in the Account Holder Acknowledgement is invalid and unenforceable per KRS 417.050(2); hence, the circuit court properly denied appellants' motions to compel arbitration.

For the foregoing reasons, the Opinion and Order of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANTS
KENNETH ALVIN O'NEIL AND
KENTUCKY PLANNING
PARTNERS:

Andrew J. Dorman
Cleveland, Ohio

Danielle J. Lewis
Andrew Pettijohn
Louisville, Kentucky

BRIEFS FOR APPELLANTS JOHN
HANCOCK LIFE INSURANCE
COMPANY (U.S.A.):

Steven P. DelMauro
Colleen M. Duffy
Tinton Falls, New Jersey

Jill F. Endicott
Jeremy S. Rogers
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANTS KENNETH ALVIN
O'NEIL AND KENTUCKY
PLANNING PARTNERS:

Danielle J. Lewis
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANTS JOHN HANCOCK
LIFE INSURANCE COMPANY
(U.S.A.):

Colleen M. Duffy
Tinton Falls, New Jersey

BRIEFS FOR APPELLEE DALE
RAE HUTCHENS, PERSONALLY
AND AS GUARDIAN FOR ADAM
HAHN HUTCHENS:

Michael D. Grabhorn
Andrew M. Grabhorn
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEE DALE RAE
HUTCHENS, PERSONALLY AND
AS GUARDIAN FOR ADAM HAHN
HUTCHENS:

Michael D. Grabhorn
Louisville, Kentucky

Jill F. Endicott
Jeremy S. Rogers
Louisville, Kentucky